# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY GONZALEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF MERCED, et al.,<br><br>  Defendants. | Case No.  1:16-cv-01682-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT COUNTY OF MERCED'S MOTION TO DISMISS  WITH LEAVE TO AMEND AND GRANTING DEFENDANT GREGORY RICH'S MOTION TO STAY<br><br>(ECF Nos. 7, 11, 12, 16, 17, 18, 19, 20, 21)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

On November 29, 2016, Defendant County of Merced ("Defendant County") filed a motion to dismiss which was referred to the undersigned for issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  (ECF Nos. 7, 8.)

On December 20, 2016, Defendant Gregory Rich ("Defendant Rich") filed a motion to stay this action pending the resolution of the state criminal prosecution of Defendant Rich, which was referred to the undersigned for issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  (ECF Nos. 11, 13.)

Oral argument on the motion to dismiss and motion to stay was conducted on January 25, 2017.  Sanjay Stephen Schmidt appeared telephonically for Plaintiff, Roger Matzkind appeared telephonically for Defendant County, and Marshall Bluestone appeared for Defendant Rich.  On January 27, 2017, Defendant Rich filed a notice of the status of his state court criminal action. (ECF No. 24.)  For the reasons set forth below, the Court recommends that Defendant County's

motion to dismiss be granted with leave to amend and that Defendant Rich's motion to stay be granted.

## I.

## BACKGROUND

On November 4, 2016, Plaintiff filed this action against Defendant County and Defendant Rich. (ECF No. 1.)

On November 29, 2016, Defendant County filed a motion to dismiss. (ECF No. 7.) On November 30, 2016, Chief Judge Lawrence J. O'Neill referred the motion to the undersigned for issuance of findings and recommendations. (ECF No. 8.) On December 20, 2016, Defendant Rich filed a motion to stay this action pending the resolution of the state criminal action against him and a request for the Court to take judicial notice of two documents.[1] (ECF Nos. 11, 12.) On December 21, 2016, Chief Judge O'Neill referred the motion to stay to the undersigned for issuance of findings and recommendations. (ECF No. 13.) The undersigned set the motion to dismiss and motion to stay for January 25, 2017, before the undersigned. (ECF Nos. 9, 14.)

On January 11, 2017, Defendant County filed an opposition to the motion to stay. (ECF No. 16.) On January 11, 2017, Plaintiff filed oppositions to the motion to stay and motion to dismiss. (ECF Nos. 17, 18.) In Plaintiff's opposition to the motion to stay, Plaintiff also objected to and moved to strike Exhibit A to Defendant Rich's motion to stay. (ECF No. 17 at 10.)[2]

On January 18, 2017, Defendant County filed a reply in support of its motion to dismiss and a request for the Court to take judicial notice of a fact.[3] (ECF Nos. 19, 20.) On January 19,

---

[1] The Court grants Defendant Rich's request to take judicial notice of Exhibit B, the certified copy of the Felony Criminal Complaint against Defendant Rich filed on February 19, 2015. See Fed. R. Evid. 201. However, as discussed below, the Court denies Defendant Rich's request to take judicial notice of Exhibit A.

[2] Plaintiff argues that the criminal complaint against her, which was appended Exhibit A to Defendant Rich's motion to stay, is irrelevant to the issues presently before the Court. In his reply, Defendant Rich asserts that information about the criminal charges that Plaintiff faced on the date of the alleged incident would be relevant to why Plaintiff was upset on the ride back in the van. However, this information is not relevant to Defendant Rich's motion to stay the action. Therefore, the Court does not take judicial notice of Exhibit A, certified copy of the Felony Criminal Complaint filed on August 6, 2014, against Plaintiff.

[3] The Court grants Defendant County's request for judicial notice of a fact.

2017, Defendant Rich filed a reply in support of his motion to stay.  (ECF No. 21.)[4]

## II.

## LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A motion under Rule 12(b)(6) tests the legal sufficiency of a claim.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, the court is to accept as true "all material allegations of the complaint, . . . as well as all reasonable inferences to be drawn from them."  Navarro, 250 F.3d at 732.  "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  While detailed factual allegations are not required, the factual allegations of the complaint must plausibly suggest an entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Starr, 652 F.3d at 1216.  Dismissal of the complaint is appropriate where the complaint fails to state a claim supportable by a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  Where it is apparent on the face of the complaint that the limitations period has run, defendants may raise a statute of limitations defense in a motion to dismiss.  Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010).

### B.     Legal Standard for a Motion to Stay

A party has no constitutional right to a stay of civil proceedings during the pendency of a criminal investigation or prosecution, nor does the Constitution protect a party from being forced

---

[4] The Court notes that Defendant Rich's reply is 1 day late.  Pursuant to Local Rule 230(d), a moving party may serve and file a reply to any opposition filed by a responding party not less than seven days preceding the date of hearing.  Here, the hearing was continued to January 25, 2017.  Therefore, any reply by Defendant Rich in support of his motion to stay was due on or before January 18, 2017.  Defendant Rich did not file a motion for an extension of time or a request to file his reply late.  The Court notes that Defendant Rich's untimely reply does not alter this Court's findings and recommendations regarding his motion to stay.

3

to choose between the consequences of asserting or waiving his Fifth Amendment rights in the civil proceedings. Baxter v. Palmigiano, 425 U.S. 308, 318–19 (1976); Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989). Even so, after considering "the particular circumstances and competing interests involved in the case," a court has discretion either to stay the entire proceeding or fashion some other, less drastic way to protect a party's Fifth Amendment rights. Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir.1995).

"The case for staying civil proceedings is 'a far weaker one' when '[n]o indictment has been returned [, and] no Fifth Amendment privilege is threatened." Molinaro, 889 F.2d at 903 (quoting SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

In considering whether to stay the proceedings, the court "should consider 'the extent to which the defendant's [F]ifth [A]mendment rights are implicated.' " Keating, 45 F.3d at 324 (quoting Molinaro, 889 F.2d at 902). In addition, the court should consider the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to the plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Keating, 45 F.3d at 325.

### III.

### ALLEGATIONS IN FIRST AMENDED COMPLAINT

On or about January 27, 2015, Plaintiff was a pretrial detainee in the custody of Defendant County, and was being transported from the Merced County Courthouse to John Latorraca Correctional Facility ("JLCF") in a Defendant County vehicle driven by Defendant Rich. (Compl. ¶ 12, ECF No. 1.) One of Defendant Rich's responsibilities granted by Defendant County was driving inmates to and from their court appearances. (Id.)

Plaintiff was seated on one side of the vehicle with another female inmate. (Id.) A cage separated the female inmate's side from the male inmates' side. (Id.) After the male inmates were unloaded and gone from the vehicle, Defendant Rich directed Plaintiff to exit the vehicle.

1  (Id. at ¶ 13.) Plaintiff asked "[f]or what?" and then proceeded to get up from her seat to go to the
2  other side of the vehicle. (Id. at ¶ 14-15.) In order to move to the other side of the vehicle,
3  Plaintiff had to turn her back to Defendant Rich as she utilized the vehicle's built in step-stool to
4  help her get down to the ground. (Id. at ¶ 15.) As she was on the step-stool part of the vehicle
5  with her back to Defendant Rich, Defendant Rich deliberately, forcefully, and in a
6  constitutionally violative fashion put his hand on Plaintiff's vaginal area. Plaintiff responded
7  with an emphatic question along the lines of, "what the …?" in an immediate, vigorous, loud,
8  and protesting manner as she sat down where she was ordered to sit by Defendant Rich. (Id. at ¶
9  16.) Defendant Rich remained silent. (Id.)

10  After Plaintiff seated herself, Defendant Rich, who was facing Plaintiff, rapaciously
11  groped Plaintiff again in her genital area. (Id.) Plaintiff was helpless and unable to defend
12  herself because she was in full body shackles. (Id.)

13  Defendant Rich then drove Plaintiff to the female entrance to the JLCF as if nothing had
14  occurred. (Id. at ¶ 17.) Plaintiff did not physically resist, insult, threaten, touch, batter, or assault
15  Defendant or fail to promptly obey any order prior to or after the two touchings of Plaintiff's
16  genital area.

17  Plaintiff's first cause of action is against Defendant Rich for violation of 42 U.S.C. §
18  1983 for depriving Plaintiff of the right to privacy, right to be free from the unreasonable search
19  and seizure of one's person, right to the equal protection of the laws, and right to one's liberty in
20  bodily integrity. (Id. at ¶¶ 21-26.) Plaintiff's second cause of action is against Defendant
21  County for a violation of 42 U.S.C. § 1983 based on the customs, policies, practices, and/or
22  procedures of Defendant County based on Monell v. Dep't of Soc. Servs. Of City of N.Y., 436
23  U.S. 658 (1978). (Id. at ¶¶ 27-33.)

**IV.**

**DISCUSSION**

**A.  Defendant County's Motion to Dismiss the Monell Claim Should be Granted with Leave to Amend**

Defendant County argues that the Monell claim should be dismissed because the Monell

1  claim is devoid of substantive factual allegations against Defendant County.  Defendant County
2  asserts that the complaint's allegations are insufficient because they are conclusory, and even so,
3  they are to be on information and belief in this action.  Plaintiff counters that Defendant
4  County's motion to dismiss attempts to shoehorn the specific and multi-layered Monell
5  allegations in this case into the very narrow purview of Flores.  To distinguish its case from
6  Flores, Plaintiff states that the Monell allegations at issue here are not alleged failures to train
7  officers not to commit sexual assaults.  (ECF No. 18 at 2.)

8  "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a
9  person acting under color of state law committed the conduct at issue, and (2) that the conduct
10 deprived the claimant of some right, privilege, or immunity protected by the Constitution or
11 laws of the United States."  Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).  "Section
12 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating
13 federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting
14 Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)).  Section 1983 and other federal civil rights
15 statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities
16 secured' to them by the Constitution."  Carey v. Piphus, 435 U.S. 247, 253 (1978) (quoting
17 Imbler v. Pachtman, 424 U.S. 409, 417 (1976)).  "The first inquiry in any § 1983 suit, therefore,
18 is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"
19 Baker, 443 U.S. at 140.  Stated differently, the first step in a section 1983 claim is to identify the
20 specific constitutional right allegedly infringed.  Albright v. Oliver, 510 U.S. 266, 271 (1994).
21 "Section 1983 imposes liability for violations of rights protected by the Constitution, not for
22 violations of duties of care arising out of tort law."  Baker, 443 U.S. at 146.

23 The Plaintiff's theory of liability against the Defendant County is upon the municipal
24 liability under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691
25 (1978).  Under Monell, 436 U.S. at 691 (1978), "a municipality cannot be held liable under §
26 1983 *solely* because it employs a tortfeasor ... in other words, a municipality cannot be held
27 liable under § 1983 on a *respondeat superior* theory."  A municipality can only be held liable for
28 injuries caused by the execution of its policy or custom or by those whose edicts or acts may

fairly be said to represent official policy. Id. at 694. "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.' " Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)).

A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990).

To impose liability against the Defendant County here, a plaintiff must establish: (1) that she possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." City of Canton v. Harris, 489 U.S. 378, 389–91 (1989). The Ninth Circuit has held that "a local government may also be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010) (citing Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 & n.2 (9th Cir. 1988)).

A plaintiff who sets forth a Monell claim against an entity defendant must show that the entity acted with deliberate indifference to the constitutional rights of the plaintiff in adhering to a policy or custom or by acts of omission. See Castro v. County of Los Angeles, 833 F.3d 1060, 1068-69 (9th Cir. 2016) (quoting City of Canton, 489 U.S. at 392); Clouthier, 591 F.3d at 1249. The Ninth Circuit has held that an objective standard of notice applies to Monell claims. See Castro, 833 F.3d at 1076. The objective deliberate indifference standard is met when a "plaintiff [ ] establish[es] that the facts available to [entity] policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of

the constitutional rights of their citizens." Id. (quoting Canton, 489 U.S. at 396) (emphasis added). Municipal liability cannot be premised on respondeat superior and it is not sufficient for a plaintiff to merely point to something that the city could have done to prevent the incident. Clouthier, 591 F.3d at 1250 (citing Canton, 489 U.S. at 392).

"Since Iqbal, courts have repeatedly rejected conclusory Monell allegations that lack factual content from which one could plausibly infer Monell liability." See Rodriguez v. City of Modesto, 535 Fed. App'x 643, 646 (9th Cir. 2013) (affirming district court's dismissal of Monell claim based only on conclusory allegations and lacking factual support). In AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d 631, 637 (9th Cir. 2012), the Ninth Circuit held that pleadings in a case involving Monell claims are subject to the standard set forth in Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011). In Starr, the Ninth Circuit held that allegations in a complaint cannot simply recite the elements of a cause of action, "but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr, 652 F.3d at 1216. The allegations must also plausibly suggest an entitlement to relief, "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id.

The question to be considered in this motion is whether Plaintiff has alleged a custom, practice, procedure, regulation or any other basis supporting a claim against Defendant County pursuant to Monell in her complaint. The Court finds that Plaintiff's allegations can be broken down into two main categories. First, the Court addresses Plaintiff's allegations that Defendant County is liable because it failed to have an adequate policy to facilitate opposite sex transports and failed to require the presence and supervision of at least two correctional officers, one of each sex, when transporting detainees. Second, the Court addresses Plaintiff's allegations that Defendant County failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Rich, doe defendants, and any other personnel under each supervisor defendant's supervision. The Court then addresses whether it is proper to grant

Plaintiff leave to amend her complaint.[5]

### 1. Plaintiff's Allegations that Defendant County Failed to Have an Adequate Policy to Facilitate Opposite Sex Transports and Failed to Require the Presence and Supervision of at Least Two Correctional Officers, One of Each Sex, When Transporting Detainees Are Not Sufficient to State a Claim

The majority of the parties' arguments address Plaintiff's allegations that Defendant County failed to have an adequate policy for facilitating opposite sex transports, where the correctional officer carrying out the transport is the opposite sex of the detainee. The parties arguments also address the specific allegation that Defendant County had a policy requiring the presence and supervision of at least two correctional officers, one of each sex, when transporting detainees to and from the Merced County Courthouse and the JLCF.

Defendant County relies primarily on Flores v. County of Los Angeles, 758 F.3d 1154 (9th Cir. 2014), to support its argument for dismissal. Defendant County contends that Plaintiff's complaint is insufficient because it does not contain specific allegations of relevant prior sexual assaults by Defendant on inmates or a pattern of violations.

In Flores, the Ninth Circuit upheld a district court's dismissal for Plaintiff's failure to state a Monell claim for failure to train. In Flores, the plaintiff "alleged that defendants 'failed to implement proper training to protect women to ensure that Sheriff's [d]eputies do not sexually assault women that … [they] come into contact with at the Vehicle Inspection Area.' " Flores, 758 F.3d at 1157. The plaintiff "proposed additions to the Sheriff's Department Manual that would instruct deputies that they 'shall not sexually harass or sexually attack women with whom they come into contact.' " Id. The Ninth Circuit found that "[t]he isolated incidents of criminal wrongdoing by one deputy other than Deputy Doe 1 do not suffice to put the County or Baca on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.' " Id. at 1159 (quoting Connick v. Thompson, 563 U.S. 51, 62 (2011)). There was not a "pattern of similar constitutional violations

---

[5] While Plaintiff stated in oral argument that this is not a training case, and hence distinguishable from Flores v. County of Los Angeles, 758 F.3d 1154 (9th Cir. 2014), the complaint nevertheless forwards a theory of municipal liability based upon a failure to properly train. While failure to train is one of many bases for Monell liability in the complaint, it still seems to be a premise of liability.

1  by untrained employees." Flores, 758 F.3d at 1159 (citing Connick, 563 U.S. at 63.)  Although
2  there is a "narrow range of circumstances [in which] a pattern of similar violations might not be
3  necessary to show deliberate indifference," the Ninth Circuit found that the failure to train police
4  officers not to commit sexual assault did not have patently obvious unconstitutional
5  consequences. Flores, 758 F.3d at 1159-1160 (quoting Connick, 563 U.S. at 63).

6        Plaintiff argues that based on the objective deliberate indifference standard for Monell
7  claims, she has sufficiently alleged a Monell claim.  Plaintiff suggests that Defendant County's
8  argument would allow it and other entities to get "one free bite at the apple" before being liable.
9  While idioms may have a place in some legal jurisprudence, this is not the standard the Court is
10 governed by in deciding this matter.  It is municipal liability and how the municipality involved
11 here is liable under the law.

12       Here, Plaintiff alleges in the complaint that Defendant County should have had a policy,
13 procedure, or program that would facilitate opposite sex transports in a fashion that would
14 protect female detainees from male Correctional Officers sexually assaulting them. (Compl. at ¶
15 28.)  Plaintiff also alleges that Defendant County should have required the "presence and
16 supervision of at least two COUNTY Correctional Officers, one of each sex, when transporting
17 detainees to and from the Merced County Courthouse and the John Latorraca Correctional
18 Facility." (Compl. at ¶ 28.)  Another relevant allegation from Plaintiff's complaint is that
19 Defendant County "fail[ed] to have and enforce necessary, appropriate, and lawful policies,
20 procedures, and training programs to prevent or correct the unconstitutional conduct. (Comp. at
21 ¶ 28).

22       In this action, the alleged constitutional violation is similar to Flores.  In both cases, a
23 plaintiff was allegedly sexually assaulted by an employee of the defendant entity.  While the sole
24 claim in Flores was based on a failure to train officers not to commit sexual assaults, here,
25 Plaintiff has alleged that Defendant County should have had a policy regarding the manner of
26 transporting female detainees that would have prevented sexual assaults from occurring.

27       Plaintiff argues that there is an abundance of information about how common the
28 incidence of officer-on-inmate sexual assault is in correctional facilities. (ECF No. 18 at 14.)  At

1  the hearing, Plaintiff argued that this information can be imputed to Defendant County.
2  However, the allegations in the complaint do not contain any facts explaining how the infirmity
3  of the custom or policy or the omission of a policy as alleged by Plaintiff put policymakers on
4  notice through actual notice or constructive notice that the constitutional injury was likely to
5  occur. Therefore, the Court finds that the complaint does not sufficiently state a claim on
6  Plaintiff's theories that Defendant County failed to adopt an adequate policy for facilitating
7  opposite sex transports and, specifically, that Defendant County should have had a policy
8  requiring the presence and supervision of at least two correctional officers, one of each sex,
9  when transporting detainees to and from the Merced County Courthouse and the JLCF. Castro,
10 833 F.3d at 1076 (quoting Canton, 489 U.S. at 396).

   2.  **Plaintiff's Allegations that Defendant County Failed to Hire, Train, Instruct, Monitor, Supervise, Evaluate, Investigate, and Discipline Defendant Rich, Doe Defendants, and Any Other Personnel Under Each Supervisor Defendant's Supervision are Not Sufficient to State a Claim**

14  Plaintiff's complaint also includes allegations that Defendant County failed to properly
15 hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Rich, doe
16 defendants, and any other personnel under each supervisor defendant's supervision, with
17 deliberate indifference to Plaintiff's constitutional rights. (Compl. at ¶ 31.)
18  Defendant County cites to Board of County Com'rs of Bryan County, Okl. v. Brown, 520
19 U.S. 397, 410-11, in support of its argument that Plaintiff has not sufficiently stated a municipal
20 liability claim based on Defendant County's decision to hire Defendant Rich. The Supreme
21 Court found that in claims based on deficiencies related to hiring, "[o]nly where inadequate
22 scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the
23 plainly obvious consequence of the decision to hire the applicant would be the deprivation of a
24 third party's federally protected right can the official's failure to adequately scrutinize the
25 applicant's background constitute 'deliberate indifference.' " Board of County Com'rs of Bryan
26 County, 520 U.S. at 411.
27  Plaintiff counters that she has sufficiently stated a claim because she not only alleges
28 liability based on Defendant County's decision to hire Defendant Rich, but also alleges that

Defendant County failed to properly train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Rich.  See Compl. at ¶ 31.  However, Plaintiff does not specify in her complaint any specific ways that Defendant County failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline other than "with deliberate indifference to Plaintiff's constitutional rights." (Compl. at ¶ 31.)

It appears that Plaintiff alleges that Defendant County failed to train, instruct, monitor, and supervise Defendant Rich not to sexually assault detainees to transport detainees in a manner that would prevent sexual assaults of detainees, and specifically, to always have two correctional officers, one of each sex, transport detainees.  Allegations that Defendant County failed to train, instruct, monitor, or supervise Defendant Rich to transport detainees in a manner that would prevent sexual assault of detainees, and specifically, to always have two correctional officers, one of each sex, when transporting detainees is not sufficient to allege a claim for the same reasons discussed above regarding Plaintiff's claim that Defendant County failed to have or enforce this policy.  Similarly, while Flores was a failure to train case, its analysis fits within the confines of this case as Flores did address Monell liability.   As noted, Flores found that "[t]he isolated incidents of criminal wrongdoing by one deputy other than Deputy Doe 1 do not suffice to put the County or Baca on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.' " Id. at 1159 (quoting Connick v. Thompson, 563 U.S. 51, 62 (2011)).  There was not a "pattern of similar constitutional violations by untrained employees." Flores, 758 F.3d at 1159 (citing Connick, 563 U.S. at 63.)  Similarly, the failure to hire, instruct and/or evaluate by a municipality its employees in avoiding clearly illegal conduct require facts to be pled which show that deliberate indifference.   After all, the isolated incidents of criminal wrongdoing by one deputy do not suffice to put a County on notice that its failure to train, hire or evaluate is deficient and that its absence will cause violations of constitutional rights.  See Flores, 758 F.3d at 1159 (while the case is focused on training, a similar rationale can be applied since the Flores court was discussing a County's deliberate indifference under Monell).

Therefore, the complaint does not sufficiently state a claim on Plaintiff's theories that

Defendant County failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Rich, doe defendants, and any other personnel under each supervisor defendant's supervision, with deliberate indifference to Plaintiff's constitutional rights. Thus, the Court finds that Plaintiff has failed to allege facts in her complaint to show the existence of a policy, practice, custom, or omission sufficient to state a claim under Monell against Defendant County. See AE ex rel. Hernandez, 666 F.3d at 637; Starr, 652 F.3d at 1216.

### 3. Plaintiff Should be Granted Leave to Amend

The final inquiry regarding Defendant County's motion to dismiss is whether Plaintiff should be granted leave to amend.

Generally, leave to amend shall be freely given when justice so requires. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" Id. (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend should be freely given in the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. Id. at 1051-52. Absent prejudice, or a strong showing of the other factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. Id. at 1052. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." Id. at 1052 (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)).

To the extent that new or different can be alleged to render the claims cognizable, Plaintiff should be granted leave to amend her Monell claim. Accordingly, the Court recommends that Defendant County's motion to dismiss the Monell claim be granted, but Plaintiff be granted leave to amend.

### B. Defendant Rich's Motion to Stay Action Should be Granted

Defendant Rich requests that the Court stay this action pending resolution of the criminal prosecution which arises out of the same January 27, 2015 incident upon which this civil

complaint is based. There is no dispute that the criminal case and civil case arise out of the alleged incident involving Plaintiff that occurred on January 27, 2015. Both Defendant County and Plaintiff oppose Defendant Rich's motion to stay, although Defendant County does not oppose a stay of the action insofar as Defendant Rich is concerned. However, at the hearing on the motion to stay, Defendant County indicated that its main objection to the motion to stay was because it wanted the motion to dismiss the Monell claim to be decided by the Court. Defendant County stated that if it remains in this action after the Court's decision on the motion to dismiss the Monell claim, it believes that the entire action should be stayed.

Next, the Court discusses Defendant Rich's motion to stay in the context of the five Keating factors. See Keating, 45 F.3d at 325.

1. Interest of Plaintiff and Defendant County in Proceeding Expeditiously with This Litigation or Any Particular Aspect of It, and the Potential Prejudice to the Plaintiff and Defendant County of a Delay Weigh in Favor of Denying Stay

Defendant Rich argues that there is little, if any, prejudice to Plaintiff in delaying this action. Defendant Rich contends that it is not likely that a temporary stay of this action would meaningfully affect Plaintiff's ability to locate witnesses. Defendant Rich asserts that staying this action would actually aid Plaintiff with the identification of any other witnesses that may be called in Defendant Rich's trial and the ability to contact those witnesses.

Plaintiff counters that she has a strong interest in promptly recovering her losses and in preserving evidence that is critical to this action. Plaintiff contends that this case has already been delayed in its filing. However, the Court notes that Plaintiff does not explain why or how she was delayed in filing this case. Plaintiff argues that an indefinite delay would harm her financial interests because a delay in this case would result in additional challenges for her in recovering any damages that are awarded. Plaintiff also argues that evidence could be lost or destroyed, the memories of Plaintiff's two witnesses would fade, and the ability to locate witnesses would become more difficult during a stay.

Although Plaintiff argues that a stay would allow Defendant Rich to have the opportunity to hide and fraudulently transfer assets, there has been no proof presented that Defendant Rich has attempted or will attempt to do this. There is also no proof that Defendant Rich would not be

able to pay any damage award on account of the extra time that this action is stayed. The instant action was filed on November 4, 2016. The alleged incident occurred on January 27, 2015. While Plaintiff argues that an indefinite stay would adversely affect her, it appears that Defendant Rich's criminal trial will be set soon. A trial scheduling hearing was held in Defendant Rich's criminal case for January 26, 2017. On January 27, 2017, Defendant Rich filed a notice of the status of his criminal action indicating that a trial date was not set at the January 26, 2017 hearing because the District Attorney filed a Pitchess motion at the hearing for Defendant Rich's employee records. (ECF No. 24.) The Pitchess motion is set to be heard on February 16, 2017. (Id.) Defendant Rich's attorney in the criminal action anticipates that a trial date will be set on February 16, 2017, and that the trial will be set in July 2017. (Id.) The Court notes that if the trial in Defendant Rich's criminal action is set for a date later than July 2017, then there may be changed circumstances and analysis of the Keating factors to support a motion to lift the stay.[6]

In its opposition to the motion to stay, Defendant County argues that it would be unfairly prejudiced by the delay of any future dispositive motions. However, as discussed above, at the hearing on the motion to stay, Defendant County stated that if it remains in this action after the Court's decision on the motion to dismiss the Monell claim, it believes that the entire action should be stayed.

The Court finds that it may be more efficient for Defendant County to litigate the merits of the Monell claim at the same time as the individual claim against Defendant Rich, because whether Defendant Rich violated Plaintiff's constitutional rights is a part of the Monell claim. Also, discovery issues could arise in discovery between Plaintiff and Defendant County that impact Defendant Rich and could cause extra proceedings and/or duplicative discovery when the stay is lifted as to Defendant Rich.

Accordingly, the Court finds that this factor weighs in favor of denying Defendant Rich's motion to stay.

---

[6] However, the Court does not express an opinion as to whether the stay would be lifted based upon trial not commencing during or before July 2017. The Court would have to evaluate the parties' arguments regarding the Keating factors.

### 2. Burden Which Any Particular Aspect of the Proceedings May Impose on Defendant Rich Weighs Heavily in Favor of Granting a Stay

Defendant Rich argues that because he has a pending criminal case involving the same subject matter as the instant civil action, he has a powerful incentive to invoke his Fifth Amendment right from compelled self-incrimination. Defendant Rich also argues that if he does exercise that right in the civil action, then he cannot adequately defend himself in this action, and the trier of fact may draw an adverse inference, which prejudices him. Defendant Rich contends that he may be forced to expose the basis of his criminal defense and the scope of discovery for the criminal case would in effect be expanded since civil discovery has a broader scope.

Plaintiff argues that Defendant Rich cannot show that the civil litigation will impose any burden on him that is distinct from the general burden that every civil litigant undertakes. Plaintiff asserts that many courts in the Ninth Circuit have forced defendants to choose between their Fifth Amendment privilege and an adverse inference in their civil case when the existence of criminal charges is uncertain. However, here, there is a pending criminal prosecution against Defendant Rich, and not merely a speculative chance of a criminal prosecution.

The Court finds that the overlapping facts and circumstances of these two cases would adversely affect Defendant Rich's ability to defend himself in the related criminal action if discovery in this action was allowed to proceed. Therefore, the burden that the instant civil action may impose on Defendant Rich weighs heavily in favor of granting a stay.

### 3. Convenience of the Court in the Management of Its Cases, and the Efficient Use of Judicial Resources Weighs in Favor of Granting a Stay

Defendant Rich argues that permitting a stay of this action would result in fewer discovery disputes and a more open, unimpeded discovery process. Plaintiff argues that granting a stay would impose an undue burden on this Court's docket and interfere with its efficient management of this case.

Allowing this civil action to continue while Defendant Rich's criminal prosecution is pending would result in an inefficient use of judicial resources. Although Plaintiff suggests that a stay would be inconvenient to the Court because there is no trial date set in the criminal action,

1  Defendant Rich indicates that his defense counsel in the criminal action anticipates a trial date
2  being set at a hearing on February 16, 2017.  Defendant Rich's counsel in the criminal action
3  anticipates that the trial will be set for a date in July 2017.  While there is no trial date set in the
4  criminal action, it appears that the trial will occur in approximately six months.  Allowing the
5  criminal action to proceed first may streamline discovery in this action and help expedite the
6  resolution of this action.

7  If the Court denied the stay as to Defendant County, then the Court could possibly have
8  to litigate discovery disputes and other issues in this action twice.  Further, an element of the
9  Monell claim is that the policy caused the constitutional violation, so without a constitutional
10 violation, Defendant County cannot be liable.

11 Therefore, in the interests of judicial efficiency, the Court finds that this factor weighs in
12 favor of granting a stay of the entire action.

13          4.      Interests of Persons Not Parties to the Civil Litigation Do Not Weigh in Favor of
                    Granting or Denying a Stay
14

15 Defendant Rich contends that this factor does not weigh in favor of or against a stay as
16 there are no third-party interests that bear upon the resolution of this motion.  Plaintiff does not
17 address this factor in her opposition.  The Court finds that this factor does not weigh in favor of
18 granting or denying a stay.

19          5.      Interest of the Public in the Pending Civil and Criminal Litigation Weighs
                    Slightly Against Granting a Stay
20

21 Defendant Rich argues that the public has an interest in the orderly and proper
22 administration of criminal justice.  Plaintiff argues that there is a strong public interest in
23 protecting a plaintiff's right to a speedy resolution of civil actions, especially involving Federal
24 civil rights. While the public does have an interest in ensuring that the victim is made whole as
25 rapidly as possible, the stay in this matter is not expected to last a long time, as it is anticipated
26 that Defendant Rich's criminal trial will be set for a date in July 2017.  Therefore, this factor
27 weighs slightly against granting a stay.
28          Accordingly, when the Court weighs the five Keating factors, the Court recommends that

the action be stayed as to Defendant Rich at this time, but not as to Defendant County until an answer is filed by Defendant County.[7]  Once an answer is filed, then the stay should be applicable to all defendants.[8]  However, it is recommended that a review hearing be set 90 days from the date that the motion to stay is granted as to Defendant Rich and that Defendant Rich be required to file a status report at least 7 days prior to the review hearing.

## V.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant County's motion to dismiss be GRANTED with leave to amend;

2. Defendant Rich's motion to stay this action be GRANTED as to Defendant Rich at this time, but not as to Defendant County until an answer is filed by Defendant County; and

3. A review hearing be set for 90 days from the date that the motion to stay is granted as to Defendant Rich and that Defendant Rich be required to file a status report at least 7 days prior to the review hearing.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[7] If these findings and recommendations are adopted by the district judge, Plaintiff would have the opportunity to file an amended complaint and then Defendant County would have to file a responsive pleading. See Fed. R. Civ. P. 12, 15. If Defendant County files a motion to dismiss the amended complaint, the Court should be able to decide it without it having an impact on or being effected by the stay in this action as to Defendant Rich.  If Defendant County's motion to dismiss the amended complaint is denied, Defendant County would have to file an answer, at which time the case would be stayed as to Defendant County. See Fed. R. Civ. P. 12(a)(4).

[8] Under this approach, defendant County may address any future remedies available to it should the amended complaint be insufficient to state a claim against .

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of these findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 1, 2017**

UNITED STATES MAGISTRATE JUDGE