1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9

10

11

12

13

14

| | |
|---|---|
| ASHLEY GONZALEZ,<br><br>**Plaintiff,**<br><br>v.<br><br>COUNTY OF MERCED, *et al.*,<br><br>**Defendants.** | **Case No.  1:16-cv-01682-LJO-SAB**<br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATIONS**<br><br>**(ECF Nos. 25, 26)** |

15        Plaintiff Ashley Gonzalez ("Plaintiff") filed the Complaint in this action on November 4, 2016.

16   ECF No. 1. Therein, Plaintiff, a pre-trial detainee in the custody of Defendant County of Merced

17   ("Defendant County"), has asserted against Defendant County, Gregory Rich ("Defendant Rich"), an

18   employee of Defendant County, and Does 1-10, jointly and severally, two claims[1] under 42 U.S.C.

19   § 1983 for the alleged violations of her civil rights[2] that occurred on or about January 27, 2015. *See id.*

20   On November 29, 2016, Defendant County filed a motion to dismiss the complaint, ECF No. 7, and on

21   December 20, 2016, Defendant Rich filed a motion to stay this action pending the resolution of the state

22   _____

23   [1] The first cause of action, titled "42 U.S.C. § 1983" is alleged against Defendant Rich and Does 1-5. The second cause of action, titled "42 U.S.C. § 1983 (*Monell*) is alleged against Defendant County and Does 6-10 and incorporates all previous factual allegations. *See* ECF No. 1.

24

25   [2] Specifically, Plaintiff alleged that Defendant Rich, a correctional officer tasked with transporting inmates to and from court appearances, committed two non-consensual sexual batteries of her during the course of driving her back to the county detention facility from the courthouse on or about January 27, 2015. Compl. ¶¶ 12-17.

1   criminal prosecution against him, ECF No. 11. Both motions were referred to a United States Magistrate

2   Judge pursuant to U.S.C. § 636(b)(1)(B) and Local Rule 302. ECF Nos. 8 &13.

3   On February 1, 2017, the Magistrate Judge filed Findings and Recommendations ("F&Rs"). ECF

4   No. 25. The F&Rs recommended that Defendant County's motion to dismiss be granted with leave to

5   amend and that Defendant Rich's motion to stay this action be granted as to Defendant Rich at this time,

6   but not as to Defendant County until an answer is filed by Defendant County. *Id.* The F&Rs also

7   recommended that a review hearing be set for 90 days from the date that the motion to stay is granted as

8   to Defendant Rich and that Defendant Rich be required to file a status report at least 7 days prior to the

9   review hearing. *Id.* The F&Rs were served on the parties and contained notice that any objections to

10  were to be filed within fourteen days (14) days from the date of service.

11  On February 15, 2017, Plaintiff filed objections to the findings and recommendations. ECF No.

12  26. Plaintiff objected only to the Magistrate Judge's recommendation that the Court grant Defendant

13  County's motion to dismiss. *Id.* at 1. Defendant County filed a response on March 1, 2017. ECF No. 27.

14  In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this Court has conducted a *de*

15  *novo* review of this case.  Having carefully reviewed the entire file, the Court finds the F&Rs to be

16  supported by the record and by proper analysis, and that Plaintiff's objections either repeat arguments

17  that the F&Rs have correctly rejected, or reflect a misunderstanding both of the relevant law in this case

18  and the reasoning set forth in the F&Rs.

19  First[3], Plaintiff asserts that the Complaint adequately pleads a *Monell*[4] claim based on a theory of

20

21  [3] Upon review of Plaintiff's objections, the Court determined that both the first and last of Plaintiff's five arguments, respectively entitled "Plaintiff's Complaint Adequately Pleads a *Monell* Claim Based on the First Path to Liability: that the County of Merced Itself Caused a Substantial Risk of Serious Harm" (ECF No. 26 at 4-7) and "The Magistrate Applied an

22  Incorrect Standard, Which Appears to Require Plaintiff to Plausibly Allege that a Policy Itself – or the Lack Thereof – Provided the Requisite Notice to Policymakers that Put Them on Notice that the Constitutional Injury Was Likely To Occur;

23  That would Be an Impossible Showing to Make (ECF No. 26 at 10-13), contain essentially the same argument. Distilled, both arguments claim that Plaintiff was not required to plead prior instances of similar constitutional violations in order to satisfy

24  the deliberate indifference requirement and that it was error for the Magistrate Judge to dismiss her *Monell* claim on this basis. Accordingly, the Court addresses both of these arguments together.

25  [4] *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

2

1  liability pursuant to *Monell* that Defendant County <u>itself</u> caused a substantial risk of serious harm

2  through its "policy concerning opposite sex transports." ECF No. 26 at 4-7, 10-12. Specifically, Plaintiff

3  claims that the Complaint sufficiently alleges a "policy" because "the Complaint clearly identifies a

4  course of action chosen from among the various alternatives by the County, namely, its policy

5  concerning opposite sex transports," in that it alleges that the County failed to "adopt or enforce a

6  policy, procedure or program that would facilitate the transport of detainees of the opposite sex of the

7  correctional officer(s) carrying out the transport … in a fashion that would protect female detainees from

8  predatory behavior [by male correctional officers,]" or in the alternative, the County "failed to properly

9  oversee, enforce, and/or properly carry out existing policies or training." *Id.* at 5 (*citing* Compl. ¶¶ 28,

10  29). Plaintiff then claims that the Magistrate Judge improperly required Plaintiff to allege that Defendant

11  County knew that its policy would harm Plaintiff in particular or to allege that there were prior guard-

12  on-inmate sexual assaults within Merced County. *Id.* at 5-6; 11-12. Plaintiff claims that her case is

13  analogous to the Ninth Circuit's decision in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir.

14  2016), which Plaintiff characterizes as affirming the proposition that proof of a pattern of similar prior

15  incidents is not necessary to demonstrate a *Monell* violation. *Id.* at 6-7. Plaintiff then argues that she

16  alleged that the County was sufficiently on notice "of the very realistic risk of correctional officer-on

17  inmate-sexual assaults," and that Defendant County's failure to have a policy that protected female

18  detainees from sexual assault by male correctional officers amounted to a cognizable *Monell* claim. ECF

19  No. 26 at 11-12.

20       Plaintiff is mistaken—her argument reflects a misunderstanding of what is required to establish

21  liability under *Monell*. Plaintiff correctly notes that *Monell* would permit Defendant County to be liable

22  if one of its policies caused Plaintiff to suffer a violation of her constitutional rights. However, under

23  this theory of liability, "[it] is not sufficient for a plaintiff to identify a custom or policy, attributable to

24  the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was

25  adhered to with 'deliberate indifference to [her] constitutional rights …'" *Castro*, 833 F.3d at 1076

1   (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)). Contrary to Plaintiff's assertion in

2   her objections, *Castro* does not support her position. Although in *Castro*, the Ninth Circuit did affirm

3   jury instructions that did not require proof of a pattern of similar prior incidents, *Castro* is

4   distinguishable from this case. Notwithstanding the fact that the plaintiff in *Castro* was not required to

5   demonstrate a pattern of prior incidents, the Ninth Circuit held that there was substantial evidence

6   supporting the jury's finding that Los Angeles County was deliberately indifferent towards the plaintiff

7   because the design of the cell and the policy of only checking on intoxicated inmates without adequate

8   audio monitoring was in direct contravention to the California Building Code's directives and the West

9   Hollywood police station's own manual, which required that a sobering cell "allow for maximum visual

10  supervision of prisoners by staff" and forbade the use of non-complaint sobering cells. *See* 833 F.3d at

11  1076-77. Because Los Angeles County had acted in a manner that violated the Building Code and the

12  police station's manual, it was therefore clear that a jury could find that that Los Angeles County was

13  deliberately indifferent to the plaintiff's constitutional rights. *See id.* Here, there are no analogous factual

14  allegations in the Complaint that would support a claim that Defendant County was deliberately

15  indifferent to Plaintiff's constitutional rights.[5] The Court agrees with the Magistrate Judge's

16  determination that the Complaint insufficiently pleads that Defendant County itself caused Plaintiff to

17  suffer a constitutional injury because the Complaint lacks "*any facts* explaining how the infirmity of the

18  custom or policy or the omission of a policy as alleged by Plaintiff put policymakers on notice through

19  actual notice or constructive notice that the constitutional injury was likely to occur." *See* ECF No. 25 at

20

21  _____

22  [5] The Magistrate Judge adequately addressed Plaintiff's argument that how general information about the frequency of
    officer-on-inmate sexual assault could be imputed to Defendant County in the F&Rs in noting that the allegations in the
    complaint did not explain how this general information amounts to "actual or constructive notice" that would constitute
23  deliberate indifference. *See* ECF No. 25 at 10-11.To this finding, the Court now also notes that factual allegations not made
    in the complaint cannot be considered for purposes of a 12(b)(6) motion to dismiss. *See Schneider v. Cal. Dept. of Corrs.*,
24  151 F.3d 1194, 1198 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look
    beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to
25  dismiss") (emphasis in original).

1    10-11 (emphasis added).[6] The Court therefore rejects Plaintiff's argument that the Magistrate Judge

2    applied the wrong standard of proof regarding deliberate indifference.

3          For this reason, the Court also rejects Plaintiff's argument that the Complaint has adequately

4    pleaded a *Monell* violation because it alleged that Defendant County failed to have any policy in place

5    that would have prevented Plaintiff's injury. *See* ECF No. 26 at 8. Although the Supreme Court and the

6    Ninth Circuit have recognized that a municipal entity can be liable under § 1983 for acts of "omission,"

7    *see Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on other*

8    *grounds by Castro*, 833 F.3d 1060 (citing *City of Canton*, 489 U.S. at 390)), Plaintiff would still need to

9    provide sufficient factual allegations of Defendant County's deliberate indifference towards her

10   constitutional rights. *See Castro*, 833 F.3d at 1073. As discussed above, the Magistrate Judge correctly

11   determined that Plaintiff failed to make these allegations sufficiently in the Complaint.

12         The third argument Plaintiff makes in her objections is that the Magistrate Judge placed too

13   much reliance on the Ninth Circuit's decision in *Flores v. County of Los Angeles*, 758 F.3d 1154 (9th

14   Cir. 2014). ECF No. 26 at 8-10. Plaintiff claims that "there are critical distinctions" between the

15   allegations in *Flores* and the allegations in this case, and that the holding in *Flores* is limited to

16   addressing *Monell* liability based on a "failure to train" theory. *Id.* at 9. According to Plaintiff, her

17   allegations are "fundamentally different" from those advanced in *Flores* because the Complaint in this

18   case sets forth three theories of *Monell* liability: "the absence of a policy prohibiting unaccompanied,

19   unsupervised opposite sex transport by officers, a failure to train, and a failure to supervise," and the

20   F&Rs fail to acknowledge the "key distinctions" between the Complaint's allegations and the

21   allegations at issue in *Flores*. *Id.* Plaintiff also claims it is "unclear based on the controlling authorities

22

23   [6] *Cf. Kangas v. Wright*, No. 1:15-CV-00577-CWD, 2016 WL 6573943, at *3 (D. Idaho Nov. 4, 2016) (finding that a policy-
24   based *Monell* claim against the county defendant survived 12(b)(6) dismissal because the complaint contained specific factual
     allegations demonstrating that sheriff deputies had commented on the inappropriate behavior that the individual defendant
     engaged in towards the plaintiff, which permitted a plausible inference that the sheriff deputies "encouraged the behavior, or
25   failed to recognized it as inappropriate and put an end to it, thereby setting in motion the events that culminated in the three
     sexual encounters between [the plaintiff] and [individual defendant.]").

1    how the Magistrate arrived at the conclusion that no facts were alleged in Plaintiff's Complaint to show

2    the existence of a policy, practice, custom or omission sufficient to state a claim under *Monell* against

3    County." *Id.* at 9-10.

4         Upon review of *Flores*, the Court agrees with the Magistrate Judge that *Flores* is directly on

5    point in this case. The F&Rs observed that Plaintiff has alleged a similar constitutional violation to what

6    the plaintiff in *Flores* alleged,[7] but has attempted to differentiate her case from *Flores* through

7    unsupported assertions that her allegations are "qualitatively different" from those in *Flores* by setting

8    forth what she claims are three distinct theories of liability. *See* ECF No. 26 at 9-10. As pointed out by

9    Defendant County in its response (ECF No. 27 at 1), under any of the three theories that Plaintiff has

10   proposed, she would still be required to demonstrate deliberate indifference to establish *Monell* liability

11   on the part of Defendant County. *See, e.g.*, *City of Canton*, 489 U.S. at 392 ("while claims … alleging

12   that the city's failure to provide training to municipal employees resulted in the constitutional

13   deprivation she suffered—are cognizable under § 1983, they can only yield liability against a

14   municipality where that city's failure to train reflects deliberate indifference to the constitutional rights

15   of its inhabitants."); *Peel v. Mateo*, No. 15-cv-04694-JST, 2016 WL 463269, at *3 (N.D. Cal. Feb. 8,

16   2016) (citing *Davis. v. City of Ellensberg*, 869 F.2d 1230, 1235 (9th Cir. 1989) for the proposition that

17   "[a] failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'");

18   *Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 930 (E.D. Cal. Jan. 6, 2015) (a *Monell* claim may be stated

19   "when omissions or failures to act amount to a local government policy of deliberate indifference to

20   constitutional rights."). As discussed above, the Court has determined that the Complaint fails to allege

21   sufficient facts that could plausibly support a finding that Defendant County was deliberately indifferent

22   because it does not allege any prior similar incidents, nor does it demonstrate that the need to train male

23   correctional officers to not sexually assault inmates is "patently obvious." *See Connick v. Thompson*,

24   

25   [7] Because the parties are well aware of the facts and holding in Flores, the Court will not repeat them in this Order.

1    563 U.S. 51, 63-64 (2011). "A pattern of similar constitutional violations by untrained employees is

2    'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train … Without

3    notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to

4    have deliberately chosen a training program that will cause violations of constitutional rights." *Id*. at 62.

5    Although the Supreme Court has recognized the possibility that a municipality could be liable under

6    § 1983 for failure to train "without proof of a pre-existing pattern of violations," only if the

7    unconstitutional consequences of failing to train are so "patently obvious" would it be possible for a

8    court to find single-incident liability. *See id.* at 64. As was the case in *Connick*, "[t]he obvious need for

9    specific legal training … is absent here." *Id.*; *see, e.g.*, *Kangas v. Wright*, No. 1:15-CV-00577-CWD,

10   2016 WL 6573943, at *4 (D. Idaho Nov. 4, 2016) ("a failure to train theory is tenuous in cases alleging

11   sexual assault, because so many courts have held no training is required to teach employees not to

12   commit sexual assault.")[8]; *E.G. by and through Lepe v. Maldonado*, No. 5:14-cv-01053-LHK, 2014 WL

13   5472654, at *9 (N.D. Cal. Oct. 28, 2014) ("If, on the contrary, the proper behavior is so obvious *without*

14   any training, the failure to train does not support a finding of deliberate indifference") (emphasis in

15   original). The Court has discerned no meaningful differences between the allegations in the Complaint

16   and the allegations set forth in *Flores* and finds that the Magistrate Judge's reliance on *Flores* to reach

17   its determination in this case was therefore proper.

18        Fourth, Plaintiff argues that the Complaint sufficiently alleged that the County's policies were

19   the moving force between the violation of her constitutional rights. ECF No. 26 at 10. She claims that

20   because the Complaint alleges that she, as a female inmate, was transported, unaccompanied and

21   ───────────────────

22   [8] Notably, *Kangas* also addressed an allegation similar what Plaintiff has alleged – that a "one-jailer" policy, which allowed one male correctional officer to supervised female inmates without another jailer present, amounted to a *Monell* violation. *See* 2016 WL 6573943, at *4. The court in *Kangas* found that "absent a pattern of incidents that could constitute actual or

23   constructive notice, a 'one-jailer' policy, standing alone, would not obviously result in the sexual assault of an inmate. *Id.* The court reasoned that although the plaintiff had alleged that there was a "pattern and practice" of sexual assault on female inmates, the complaint "[sought] to extrapolate from instances involving only [the plaintiff] to a general, pervasive

24   atmosphere; yet, there [were] no facts to suggest such an atmosphere, with only her conclusory statement offered in support." *Id.* Nevertheless, because the complaint in *Kangas* had made specific factual allegations that other deputies had commented

25   on the inappropriate behavior that the individual defendant showed to the plaintiff, the court found that the plaintiff had stated a plausible supervisory liability claim under § 1983.

1   unsupervised by Defendant Rich, and there was no policy to minimize "the obvious abuse of authority

2   that allegedly occurred," that there is therefore a "direct, logical, and reasonably inferable factual causal

3   link" between the violation of her constitutional rights and Defendant County's policy. *Id.*

4         At this time, the Court declines to address this argument. In establishing *Monell* liability, the

5   "moving force" requirement is separate and discrete from the requirements that Plaintiff allege that

6   Defendant County had a policy and that the policy amounted to deliberate indifference to Plaintiff's

7   constitutional rights. *See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.

8   1997) (To establish liability for an official policy or custom under *Monell*, "a plaintiff must show (1)

9   that the plaintiff 'possessed a constitutional right of which [he or she] was deprived; (2) that the

10  municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

11  constitutional right; and, (4) that the policy was the moving force behind the constitutional violation.").

12  Because the Court has determined that Plaintiff did not sufficiently allege that Defendant County was

13  deliberately indifferent to her constitutional rights, it declines to address whether any policy of

14  Defendant County was the "moving force" behind Plaintiff's alleged constitutional injury.

15        Finally, the Court agrees with the Magistrate Judge's determination that Plaintiff should be

16  granted leave to amend the Complaint. Although Defendant County has argued that leave to amend

17  should not be granted in light of the fact that Plaintiff has already obtained "free discovery"[9] of

18  Defendant County's policies regarding transportation of opposite-sex detainees (ECF No. 19 at 10; ECF

19  No. 27 at 7), and the Court agrees with Defendant County's argument that the Complaint fails to plead a

20  cognizable *Monell* violation, it is not clear that the Complaint "could not be saved by amendment."

21  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also AE ex. rel.*

22  *Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637-38 (9th Cir. 2012) ("The district court abused its

23  discretion when it denied [plaintiff] the opportunity to allege additional facts supporting the claim that

24  _____

25  [9] The Court notes that Plaintiff filed the Complaint on November 4, 2016, filed her Public Records Act Request on December 9, 2016, and did not receive the "free discovery" from Defendant County until December 22, 2016. *See* ECF Nos. 19-1, 19-2.

1  [defendants'] alleged constitutional violations were carried out pursuant to County policy or custom.").

2  Leave to amend was properly granted.

3        Accordingly, **IT IS HEREBY ORDERED** that:

4        1.    The Findings and Recommendations, filed February 1, 2017, are **ADOPTED IN FULL**;

5        2.    Defendant County's motion to dismiss Plaintiff's *Monell* claim is **GRANTED WITH**

6              **LEAVE TO AMEND**; Plaintiff must file an amended complaint within **14 days** of the

7              date of service of this Order;

8        3.    Defendant Rich's motion to stay this action is **GRANTED** as to Defendant Rich at this

9              time, but not as to Defendant County unless and until an answer is filed by Defendant

10             County; and

11       5.    A review hearing is set as to Defendant Rich for **May 24, 2017, at 10:00 a.m.**, before

12             United States Magistrate Judge Stanley A. Boone in Courtroom 9 and Defendant Rich

13             **SHALL FILE** a status report at least **7 days** prior to the review hearing.

14

15 IT IS SO ORDERED.

16    Dated:   **March 21, 2017**              _____/s/ Lawrence J. O'Neill_____
                                              UNITED STATES CHIEF DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

9