# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MERCED, et al.,<br><br>Defendants. | Case No. 1:16-cv-01682-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT COUNTY OF MERCED'S MOTION TO DISMISS PLAINTIFF'S <u>MONELL</u> CLAIM WITH LEAVE TO AMEND<br><br>(ECF Nos. 31, 32, 36, 39)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

On April 18, 2017, Defendant County of Merced ("Defendant County") filed a motion to dismiss Plaintiff's <u>Monell</u>[1] claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The matter was referred to the undersigned for issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF Nos. 31, 33.)

Oral argument on the motion to dismiss was conducted on May 24, 2017. Panos Lagos appeared for Plaintiff and James Stone appeared for Defendant County. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, except as excluded below, arguments presented at the May 24, 2017 hearing, as well as the Court's file, the Court recommends that Defendant County's motion to dismiss be granted with leave to amend.

---

[1] <u>Monell v. Dep't of Soc. Servs. Of City of N.Y.</u>, 436 U.S. 658 (1978).

# I.

# BACKGROUND

On November 4, 2016, Plaintiff filed this action against Defendant County and Defendant Rich. (ECF No. 1.) On November 29, 2016, Defendant County filed a motion to dismiss. (ECF No. 7.) On December 20, 2016, Defendant Rich filed a motion to stay this action pending the resolution of the state criminal action against him. (ECF No. 11.) On February 1, 2017, the undersigned filed findings and recommendations recommending that Defendant County's motion to dismiss be granted with leave to amend and that Defendant Rich's motion to stay this action be granted as to Defendant Rich at this time. The Court recommended the action not be stayed as to Defendant County until an answer is filed by Defendant County. (ECF No. 25.) On March 21, 2017, Chief Judge Lawrence J. O'Neill adopted the findings and recommendations. (ECF No. 29.) The Court also set a review hearing as to Defendant Rich for May 24, 2017, at 10:00 a.m., before the undersigned. (ECF No. 29.)

On April 4, 2017, Plaintiff filed her first amended complaint. (ECF No. 30.) On April 18, 2017, Defendant County filed a motion to dismiss the first amended complaint and a request for judicial notice.[2] (ECF Nos. 31, 32.) On May 10, 2017, Plaintiff filed her opposition to the motion to dismiss and a declaration with three exhibits.[3] (ECF No. 36.) On May 17, 2017, Defendant County filed a reply in support of the motion to dismiss. (ECF No. 39.)

---

[2] The Court grants Defendant County's request to take judicial notice of the fact that Defendant Rich is being prosecuted in the Superior Court of California, County of Merced, for the incident alleged by Plaintiff. See Fed. R. Evid. 201. However, the Court does not take judicial notice of the fact that Amanda Gibson, who testified she reported the incident between a female coworker (referred to as coworker 1, infra) and Mr. Rich, also testified that she did not report the incident to Defendant County until days later. This fact, which is from Ms. Gibson's deposition testimony, is not a fact that is appropriate for the Court to take judicial notice of under Federal Rules of Evidence Rule 201.

[3] A court generally cannot consider material outside of the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). However, the incorporation by reference doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." Corinthian Colleges, 655 F.3d at 999. Here, the Court considers Exhibit B (JTO Performance Module 13) attached to Plaintiff's opposition when ruling on the instant motion to dismiss because Plaintiff refers to it in the first amended complaint (FAC at ¶ 48), the document is central to Plaintiff's claim, and Defendant County does not question the authenticity. However, the Court does not consider Exhibit A (preliminary testimony of Blanca Cortez) and Exhibit C (JTO Performance Module 32, PREA) attached to Plaintiff's opposition, because these documents were not referred to in the first amended complaint.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion under Rule 12(b)(6) tests the legal sufficiency of a claim. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, the court is to accept as true "all material allegations of the complaint, . . . as well as all reasonable inferences to be drawn from them." Navarro, 250 F.3d at 732. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). While detailed factual allegations are not required, the factual allegations of the complaint must plausibly suggest an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Starr, 652 F.3d at 1216. Dismissal of the complaint is appropriate where the complaint fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

## III.

## ALLEGATIONS IN FIRST AMENDED COMPLAINT

On or about January 27, 2015, Plaintiff was a pretrial detainee in the custody of Defendant County, and was being transported from the Merced County Courthouse to John Latorraca Correctional Facility ("JLCF") in a Defendant County vehicle driven by Defendant Rich. (FAC at ¶ 12, ECF No. 30.) One of Defendant Rich's responsibilities granted by Defendant County was driving inmates to and from their court appearances. (Id.)

Plaintiff was seated on one side of the vehicle with another female inmate. (Id.) A cage separated the female inmates' side from the male inmates' side. (Id.) After the male inmates were unloaded and gone from the vehicle, Defendant Rich directed Plaintiff to exit the vehicle. (Id. at ¶ 13.) Plaintiff asked "[f]or what?" and then proceeded to get up from her seat to go to the other side of the vehicle. (Id. at ¶ 14-15.) In order to move to the other side of the vehicle,

Plaintiff had to turn her back to Defendant Rich as she utilized the vehicle's built in step-stool to help her get down to the ground. (Id. at ¶ 15.) As she was on the step-stool part of the vehicle with her back to Defendant Rich, Defendant Rich deliberately, without consent, and in a constitutionally violative fashion put his hand on Plaintiff's vaginal area. (Id.) Plaintiff responded with an emphatic question along the lines of, "what the …?" in an immediate, vigorous, loud, and protesting manner as she sat down where she was ordered to sit by Defendant Rich. (Id. at ¶ 16.) Defendant Rich remained silent. (Id.)

After Plaintiff seated herself, Defendant Rich, who was facing Plaintiff, groped Plaintiff again in her genital area. (Id.) Plaintiff was helpless and unable to defend herself because she was in full body shackles. (Id.)

Defendant Rich then drove Plaintiff to the female entrance to the JLCF. (Id. at ¶ 17.) Defendant Rich groped Plaintiff in the vaginal area as she was stepping out of the van. (Id.) Plaintiff did not physically resist, insult, threaten, touch, batter, or assault Defendant or fail to promptly obey any order prior to or after the "perverted conduct." (Id. at ¶ 18.)

Plaintiff alleges that prior to the instant incident, Defendant Rich had committed nonconsensual sexual batteries in the course and scope of his employment with Defendant County and that Defendant County had both actual and constructive knowledge of at least some of such incidents. (Id. at ¶ 19.) The prior incidents were accomplished using the opportunities created to commit sexual batteries by the policies, or lack or inadequacy thereof, created, executed, perpetuated, and/or facilitated by Defendant County. (Id.)

Plaintiff provides specific allegations for two incidents by Defendant Rich. (Id. at 21-22.) Plaintiff alleges that prior to the instant incident,[4] Defendant Rich unlawfully touched a female (coworker 1).[5] This individual was an assistant/medical clerk at JLCF in the jail medical

---

[4] Although Plaintiff alleges that the incident with coworker 1 was prior to the instant incident, she alleges that this incident occurred at, before, or around 10:00 a.m., which leads to the inference that the incident with coworker 1 occurred on the same day as the instant incident. Also, the parties' briefs and arguments at the hearing suggest that the incident with coworker 1 was on the same day as the instant incident. In filing any amended complaint, she should allege the specific date of incidents to the best of her knowledge. In a case such as this, "prior" may have different connotations. If one knows the time, one should know the date.

[5] Although this female worked for Defendant County by virtue of a contract between Defendant County and CFMG, for purposes of this order, the Court refers to her as coworker 1.

division who worked pursuant to a contract between Defendant County and the California Forensic Medical Group, Inc. ("CFMG"). (Id. at ¶ 21.) Plaintiff alleges that at, before, or around 10:00 a.m., Defendant Rich unlawfully and without consent groped coworker 1 in the left breast area and accomplished this by utilizing his position to gain private access to coworker 1 in circumstances that provided seclusion. (Id.) This incident was reported shortly thereafter to coworker 1's supervisor, and was thereafter reported to others, including officials of Defendant County, all prior to the instant incident. (Id.) Defendant County officials, supervisors, and employees knew or should have known about this incident prior to the instant incident. (Id.)

Plaintiff also alleges that prior to the instant incident,[6] Defendant Rich committed a sexual battery against a female correctional officer at JLCF employed by Defendant County ("coworker 2"). (Id. at ¶ 22.) Just as he waited until he had an opportunity to commit the sexual battery against Plaintiff, Defendant Rich waited until he was alone with coworker 2 in a room at JLCF. (Id.) Defendant Rich asked coworker 2, "Let me touch your butt, let me touch your butt," and then after being refused, asked her, "Let me lick your clit." (Id.) After sexually harassing coworker 2 and being refused, Defendant Rich grabbed her in the left buttocks area. Plaintiff contends this incident was due to Defendant County's failure—and Defendant Rich's knowledge of such failure—to protect female employees and female inmates from him and others. (Id.) Defendant Rich utilized his position of authority and the access to areas where he would be alone with female coworkers and female inmates to sexually harass and unlawfully and without consent grab the left buttocks of coworker 2. (Id.) After the incident, coworker 2 told another employee of Defendant County at JLCF that Defendant Rich had done something highly inappropriate to her, pleading, "Please don't leave me alone with him again." (Id.) This statement was made prior to the instant incident. (Id.) The other correctional officer responded, "…That's why I came back," which Plaintiff alleges implied knowledge of Defendant Rich's propensities and implied that Defendant Rich's propensities were known within JLCF. (Id. at ¶

---

[6] While Plaintiff alleges that the incident with coworker 2 happened prior to the instant incident, based on the parties' briefings and arguments at the hearing, it occurred on the same day as the instant incident. Plaintiff did not specifically allege in the first amended complaint the date that the incident with coworker 2 happened. Plaintiff should allege the specific date in any second amended complaint.

23.)  The other correctional officer had actual and constructive knowledge of Defendant Rich's propensities to commit such sexual batteries, and to touch women inappropriately or otherwise sexually harass them.  (Id.)

Supervisors at JLCF, coworkers of Defendant Rich, Defendant County, and others had actual and constructive knowledge prior to the instant incident of Defendant Rich's propensities, prior sexual batteries, and the fact that Defendant Rich utilized secluded settings to accomplish sexual harassment and sexual batteries, but they failed to protect female inmates, including Plaintiff, and female coworkers from Defendant Rich, instead continuing to permit Defendant Rich to have unrestricted and secluded access to female inmates and female coworkers.  (Id. at ¶ 26.)

Plaintiff alleges that prior to the instant incident and incidents involving coworker 1 and coworker 2, Defendant Rich was the subject of a number of internal affair ("IA") investigations by Defendant County, but was exonerated by Defendant County in all of them.  (Id. at ¶ 24.)  At least some of these incidents involved sexual misconduct, including, but not limited to sexual harassment, or sexual batteries of female inmates or coworkers.  (Id.)  Plaintiff contends that Defendant County's acquiescence and failure to discipline Defendant Rich encouraged him and emboldened him to continue to engage in sexual misconduct because it signaled to him that he would not be disciplined by Defendant County.  (Id.)  Defendant Rich communicated Defendant County's acquiescence in his misconduct to female coworkers and others in order to generate fear and intimidate, dissuade, and discourage his victims.  (Id.)  Supervisors for Defendant County would discipline employees that would report misconduct to IA in situations where IA did not sustain the allegations or otherwise absolved the named employee, such as Defendant Rich.  (Id. at ¶ 25.)

Plaintiff alleges that prior to the instant incident, other correctional officers and Defendant County transport officers that worked at JLCF transporting female inmates to and from court had also previously committed nonconsensual sexual batteries in the course and scope of their employment with Defendant County and that Defendant County had both actual and constructive knowledge of at least some of such incidents.  (Id. at 20.)  Defendant Rich's

unlawful touching of coworker 1 was part of a pattern of conduct by Defendant Rich and other male correctional officers of Defendant County to use their position of authority, power, and seclusion to commit sexual batteries against female coworkers and female inmates.  (Id. at ¶ 27.) Defendant Rich and others accomplished their unlawful touching because Defendant County failed to properly monitor their movements and activities and to implement policies that would prevent individuals like Defendant Rich from having secluded and prolonged contact with female inmates.  (Id.)

Plaintiff alleges that there is an abundance of evidence that Defendant County was on both actual and constructive notice of regarding the prevalence of officer-on-inmate sexual assault in correctional facilities and cites to four articles.  (Id. at ¶ 28.)

On or about April 21, 2015, Defendant Rich was charged with a felony violation of California Penal Code § 149 (assault by officer under color of authority) and a misdemeanor violation of Penal Code § 243.4(e)(1) (sexual battery) for the instant incident, and two additional misdemeanor violations of Penal Code § 243.4(e)(1) (sexual battery) for the incidents involving coworker 1 and coworker 2.  (Id. at ¶ 31.)

Plaintiff's first cause of action is against Defendant Rich for violation of 42 U.S.C. § 1983 for depriving Plaintiff of the right to privacy, right to be free from the unreasonable search and seizure of one's person, right to the equal protection of the laws, and right to one's liberty in bodily integrity.  (Id. at ¶¶ 34-39.)  Plaintiff's second cause of action is against Defendant County for a violation of 42 U.S.C. § 1983 based on the customs, policies, practices, and/or procedures or lack thereof of Defendant County based on Monell v. Dep't of Soc. Servs. Of City of N.Y., 436 U.S. 658 (1978).  (Id. at ¶¶ 40-51.)

**IV.**

**DISCUSSION**

Defendant County argues that the Monell claim should be dismissed because the Monell claim is devoid of substantive factual allegations.  Defendant County asserts that the complaint's allegations are insufficient because they are conclusory, and are alleged to be on information and belief in this action.  Defendant County also argues that Plaintiff has not sufficiently pled the

deliberate indifference element of the <u>Monell</u> claim and that Plaintiff has failed to allege facts supporting deliberate indifference regardless of how Plaintiff's allegations are characterized.

Plaintiff counters that Defendant County is ignoring Plaintiff's more than sufficient allegations and attempting to apply an artificially exacting pleading standard. Plaintiff also asserts that Defendant County is seeking to convert the instant motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.

### A.    Legal Standard for County Claims

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." <u>Leer v. Murphy</u>, 844 F.2d 628, 632-33 (9th Cir. 1988). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." <u>Carey v. Piphus</u>, 435 U.S. 247, 253 (1978) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 417 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" <u>Baker</u>, 443 U.S. at 140. Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. <u>Albright</u>, 510 U.S. at 271. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." <u>Baker</u>, 443 U.S. at 146.

Plaintiff's theory of liability against Defendant County is based upon municipal liability under <u>Monell</u>, 436 U.S. at 691. Under <u>Monell</u>, 436 U.S. at 691 (1978), "a municipality cannot be held liable under § 1983 <u>solely</u> because it employs a tortfeasor ... in other words, a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory." A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. <u>Id.</u> at 694. "In

addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.' " Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)).

A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990).

To impose liability against Defendant County here, Plaintiff must establish: (1) that she possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." City of Canton v. Harris, 489 U.S. 378, 389–91 (1989). The Ninth Circuit has held that "a local government may also be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010) (citing Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 & n.2 (9th Cir. 1988)).

A plaintiff who sets forth a Monell claim against an entity defendant must show that the entity acted with deliberate indifference to the constitutional rights of the plaintiff in adhering to a policy or custom or by acts of omission. See Castro v. County of Los Angeles, 833 F.3d 1060, 1068-69 (9th Cir. 2016) (quoting Canton, 489 U.S. at 392); Clouthier, 591 F.3d at 1249. The Ninth Circuit has held that an objective standard of notice applies to Monell claims. See Castro, 833 F.3d at 1076. The objective deliberate indifference standard is met when a "plaintiff [ ] establish[es] that the facts available to [entity] policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." Id. (quoting Canton, 489 U.S. at 396) (emphasis added).

Municipal liability cannot be premised on respondeat superior and it is not sufficient for a plaintiff to merely point to something that the city could have done to prevent the incident. Clouthier, 591 F.3d at 1250 (citing Canton, 489 U.S. at 392). In the context of a failure to train claim, the Supreme Court has found that to show deliberate indifference the municipal actor must disregard a known or obvious consequence of his action, which ordinarily requires that there be a pattern of similar constitutional violations by untrained employees. Connick, 563 U.S. at 61-62 (quoting Brown, 520 U.S. at 409). However, "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." Connick, 563 U.S. at 63 (citation and quotation marks omitted).

Since Iqbal, courts have rejected conclusory Monell allegations that lack factual content from which one could plausibly infer Monell liability. See e.g., Rodriguez v. City of Modesto, 535 Fed. App'x 643, 646 (9th Cir. 2013) (unpublished) (affirming district court's dismissal of Monell claim based only on conclusory allegations and lacking factual support); Via v. City of Fairfield, 833 F.Supp.2d 1189, 1196 (E.D. Cal. 2011) (collecting cases). In AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d 631, 637 (9th Cir. 2012), the Ninth Circuit held that pleadings in a case involving Monell claims are subject to the standard set forth in Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011). In Starr, the Ninth Circuit held that allegations in a complaint cannot simply recite the elements of a cause of action, "but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr, 652 F.3d at 1216. The allegations must also plausibly suggest an entitlement to relief, "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id.

**B.    Facts Outside Complaint Cannot be Considered on Motion to Dismiss**

Here, Defendant County argues facts outside of the first amended complaint to support its position as to whether a claim has been stated in the first amended complaint and whether Plaintiff should be granted leave to amend. Defendant County contends that the clerk's supervisor from CFMG did not report the matter involving coworker 1 until days later and that Plaintiff is aware that it was not reported until days later. As discussed above, the Court declines

to take judicial notice of the facts contained in Ms. Gibson's deposition testimony. In deciding a Rule 12(b)(6) motion, the Court may not look beyond the complaint without converting the motion to a motion for summary judgment. <u>Ranch Realty, Inc. v. DC Ranch Realty, LLC</u>, 614 F. Supp. 2d 983, 987 (D. Ariz. 2007). The Court declines to convert the instant motion to dismiss into a motion for summary judgment. The Court considers whether a claim has been stated based upon the allegations set forth in the first amended complaint.[7]

First, the Court addresses Defendant County's argument that the first amended complaint is insufficient because the new allegations are based on "information and belief." Second, the Court addresses Plaintiff's allegation that Defendant County is liable because it failed to have an adequate policy to facilitate opposite sex transports and failed to require the presence and supervision of at least two correctional officers, one of each sex, when transporting inmates, and failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Rich, Doe defendants, and any other personnel under each supervisor defendant's supervision.[8]

## C. Allegations Based on Information and Belief

Defendant County argues that courts have rejected allegations based upon "information and belief." Plaintiff counters that there is nothing talismanic about the phrase "information and

---

[7] As stated above, a court generally cannot consider material outside of the complaint when ruling on a motion to dismiss. <u>Hal Roach Studios, Inc.</u>, 896 F.2d at 1555 n.19. However, the incorporation by reference doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." <u>Corinthian Colleges</u>, 655 F.3d at 999.

[8] Defendant County also contends that Plaintiff cannot comply with the Rule 11 requirements because if she could, the complaint would allege the factual basis of her claims. However, Defendant County has not made a separate motion for Rule 11 sanctions. Based on the record before the Court at this time, the Court will not order Plaintiff to show cause why sanctions should not be imposed for the allegations in the first amended complaint. Because the Court will allow for amendment, any subsequent amendment is subject to Rule 11 and if any party violates Rule 11, the Court will entertain a motion for sanctions. The Court relies upon the sanctity of pleadings in the complaint and answer. If the Court finds that a complaint is sufficient and then subsequently finds out that the allegations are patently false, the Court will entertain a request for sanctions by the party who had to conduct discovery on false allegations and the Court will consider awarding that party any fees and expenses it incurred in conducting discovery. Careful attention must be made in drafting one's pleading. "Information and belief" is not immunity from sanctions.

belief" that triggers a heightened pleading standard.[9]  Allegations on information and belief are ones where the person making the allegations does not have personal knowledge.  See Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995).  "Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject."  5 Charles Alan Wright et al., Federal Practice & Procedure § 1224 (3d ed., Apr. 2015 update) (collecting cases).

In Soo Park v. Thompson, 851 F.3d 910, 928-29 (9th Cir. 2017), the Ninth Circuit held that "[b]ecause many of the relevant facts here are known only to the defendant, and in light of

---

[9] Defendant County cites to Blantz v. California Dept. of Corrections & Rehab., Div. of Correctional Health Care Services, 727 F.3d 917 (9th Cir. 2013), Yeftich v. Navistar, Inc., 722 F.3d 911 (7th Cir. 2013), and Chavez v. United States, 683 F.3d 1102 (9th Cir. 2012) to support its argument that courts have rejected allegations based upon "information and belief."  However, the courts in these cases did not hold that the fact that the allegations in a complaint are based upon "information and belief" causes the allegations to be insufficient to state a claim under Iqbal/Twombley.  Blantz, 727 F.3d at 926-27; Yeftich, 722 F.3d at 916-17; Chavez, 683 F.3d at 1110.

In Blantz, the Ninth Circuit determined that the complaint did not contain specific factual allegations regarding the defendant's involvement in the actions giving rise to the lawsuit, such as "the negative performance review, the termination of her placement, the failure to provide notice of these decisions and the negative job references."  Blantz, 727 F.3d at 927.  The Ninth Circuit found that "[a]lthough [defendant] is alleged to have 'directed' the other defendants to take these actions, no factual assertions support this allegation, and the conclusory allegations are insufficient on their own to defeat a motion to dismiss."  Id. (citing Chavez, 683 F.3d at 1110).

In Yeftich, as part of the finding that a plaintiff did not state a claim for the breach of the duty of fair representation based on bad faith, the Seventh Circuit found that "[a]lthough the plaintiffs generally allege that the union is guilty of bad faith because it 'diverted, stalled, and otherwise terminated' their grievances, the complaint lacks the factual specificity required to state a plausible breach-of-fair-representation claim."  Yeftich, 722 F.3d at 916.  The court found that "[b]are assertions of the state of mind required for the claim—here "bad faith"—must be supported with subsidiary facts."  Id. (citing Iqbal, 556 U.S. at 680-83).  The court also found that plaintiffs did not state a claim for the breach of the duty of fair representation based on arbitrariness because "[t]he plaintiffs generally allege an arbitrary failure to act on their grievances ('upon information and belief, none have been processed and all are dead'), but factual detail in support of this otherwise conclusory allegation is entirely missing."  Yeftich, 722 F.3d at 916-17.  When the court considered the fact that "the union enjoys substantial discretion in fulfilling its duty of fair representation," it found that the skeletal allegations in the complaint that mirror the elements of the alleged claim do not state a plausible claim for relief.  Id. at 917.

Although Defendant County argues in its reply that it cited to Chavez for authority that a Plaintiff cannot rely on conclusory pleadings by merely alleging "on information and belief," in Chavez, there is no mention that the allegations in the complaint were based "on information and belief."  Chavez, 683 F.3d at 1105-1112.  The Ninth Circuit found that the plaintiffs had stated a claim against only one supervisory defendant and had failed to state a claim against the other supervisory defendants because there were no "alleged facts that would allow a court to draw a reasonable inference that a reasonable supervisor in these defendants' situations would have found their conduct to be clearly unlawful."  Id. at 1110.  The court discounted the "wholly conclusory allegation that the supervisory defendants 'personally reviewed and, thus, knowingly ordered, directed, sanctioned or permitted' the allegedly unconstitutional stops" and found that "the remaining allegations do not plausibly suggest that these supervisors clearly should have regarded their conduct as unlawful."  Id.

the additional facts alleged by [plaintiff], we conclude that she has pleaded sufficient facts to state a plausible claim for civil conspiracy under Section 1983." The Ninth Circuit quoted the Second Circuit's holding that "[t]he Twombly plausibility standard … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." Soo Park, 851 F.3d at 928 (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) and citing Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995)).

Therefore, the fact that Plaintiff's first amended complaint contains numerous allegations that are "based upon information and belief" does not, in itself, mean that Plaintiff has failed to state a claim against Defendant County. The Court next reviews the allegations in the first amended complaint to determine whether Plaintiff has sufficiently alleged a policy, custom, practice, procedure, omission, or any other basis that amounts to deliberate indifference to Plaintiff's constitutional right pursuant to Monell.

### D. Unconstitutional Policy, Practice, Custom, or Omission

Although Plaintiff frames her argument in several ways she essentially argues that Defendant County's policies, practices, and customs regarding opposite sex inmate officer transports were deficient and constituted deliberate indifference. The majority of the parties' arguments address Plaintiff's allegations that Defendant County failed to have an adequate policy for facilitating opposite sex transports, where the correctional officer carrying out the transport is the opposite sex of the inmate. The parties' arguments also address the specific allegation that Defendant County should have had a policy requiring the presence and supervision of at least two correctional officers, one of each sex, when transporting inmates to and from the Merced County Courthouse and the JLCF. Defendant County argues that Plaintiff has not sufficiently pled the deliberate indifference element of the Monell claim.

As in the previous motion, Defendant County relies on Flores v. County of Los Angeles, 758 F.3d 1154 (9th Cir. 2014), to support its argument for dismissal. In Flores, the Ninth Circuit upheld a district court's dismissal for Plaintiff's failure to state a Monell claim for failure to

train.  In <u>Flores</u>, the plaintiff "alleged that defendants 'failed to implement proper training to protect women to ensure that Sheriff's [d]eputies do not sexually assault women that … [they] come into contact with at the Vehicle Inspection Area.' " <u>Flores</u>, 758 F.3d at 1157.  The plaintiff "proposed additions to the Sheriff's Department Manual that would instruct deputies that they 'shall not sexually harass or sexually attack women with whom they come into contact.' " <u>Id.</u>  The Ninth Circuit found that "[t]he isolated incidents of criminal wrongdoing by one deputy other than Deputy Doe 1 do not suffice to put the County or Baca on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.' " <u>Id.</u> at 1159 (quoting <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011)).  There was not a "pattern of similar constitutional violations by untrained employees." <u>Flores</u>, 758 F.3d at 1159 (citing <u>Connick</u>, 563 U.S. at 63.)  Although there is a "narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference," the Ninth Circuit found that the failure to train police officers not to commit sexual assault did not have patently obvious unconstitutional consequences.  <u>Flores</u>, 758 F.3d at 1159-1160 (quoting <u>Connick</u>, 563 U.S. at 63).

Here, Plaintiff again alleges in the first amended complaint that Defendant County should have had a policy, procedure, or program that would facilitate opposite sex transports in a fashion that would protect female inmates from male correctional officers sexually assaulting them.  (FAC at ¶ 42.)  Plaintiff also alleges that Defendant County should have required the "presence and supervision of at least two COUNTY Correctional Officers, one of each sex, when transporting detainees to and from the Merced County Courthouse and JLCF."  (<u>Id.</u>)  Additionally, Plaintiff alleges that Defendant County "fail[ed] to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (d) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, supervision, and/or training programs."  (<u>Id.</u>)  Plaintiff also alleges that Defendant County failed to properly hire, train, instruct, monitor, supervise, evaluate,

investigate, and discipline Defendant Rich, Doe defendants, and any other personnel under each supervisor defendant's supervision, with deliberate indifference to Plaintiff's constitutional rights. (Id. at ¶ 49.)

In this action, the alleged constitutional violation is similar to <u>Flores</u>. In both cases, a plaintiff was allegedly sexually assaulted by an employee of the defendant entity. While the sole claim in <u>Flores</u> was based on a failure to train officers not to commit sexual assaults, here, Plaintiff alleges other theories of <u>Monell</u> liability in addition to a failure to train theory. At the hearing, Plaintiff stated that she is asserting a failure to train claim, but not relying on it. She then stated that <u>Flores</u> controls the failure to train claim. Defendant County argues that the bare allegations in <u>Flores</u> are very similar to the nonconclusory allegations in the case at hand. Defendant County contends that Plaintiff has not pled the necessary facts to show deliberate indifference because she has not shown a pattern of similar violations.[10]

### Pattern of Similar Violations

Here, Plaintiff makes several allegations regarding Defendant Rich's conduct and investigations of Defendant Rich's conduct prior to the instant incident to support deliberate indifference. As stated above, the objective deliberate indifference standard is met when a "plaintiff [ ] establish[es] that the facts available to [entity] policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." <u>Castro</u>, 833 F.3d at 1076 (quoting <u>Canton</u>, 489 U.S. at 396) (emphasis added).

Plaintiff alleges in the first amended complaint that Defendant Rich previously committed nonconsensual sexual batteries in the course and scope of his employment with

---

[10] The Court recognizes that deliberate indifference is not <u>per</u> <u>se</u> about facts showing notice, knowledge or prior acts. However, the rule of law for <u>Monell</u> liability requires a showing that Defendant County was deliberately indifferent to one's constitutional rights and that its employees violated those rights. <u>Castro</u>, 833 F.3d at 1076 (quoting <u>Canton</u>, 489 U.S. at 392). Facts associated with knowledge, notice and/or prior acts leads one to establishing "deliberate indifference" as may other facts (ie: policy, if one exists). Therefore, the court is not saying one has to have these <u>per se</u> facts in a complaint to prove deliberate indifference- just facts to show that deliberate indifference. To state a claim, Plaintiff must allege sufficient facts to plausibly suggest that Defendant County is liable for the misconduct alleged. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678; <u>AE ex rel. Hernandez</u>, 666 F.3d at 637 (citing <u>Starr</u>, 652 F.3d at 1216). Otherwise, a <u>Monell</u> claim would be based upon <u>respondeat</u> <u>superior</u>, which is not permissible. <u>Monell</u>, 436 U.S. at 691.

Defendant County prior to the instant incident and that Defendant County had actual and constructive knowledge of at least some of such incidents. (FAC at ¶ 19.) This allegation is not sufficient to state the deliberate indifference element as it is conclusory as it does not explain how Defendant County had actual and constructive knowledge. Therefore, this allegation, and the other allegations that merely state "that Defendant County had actual and constructive knowledge" do not contain sufficient factual information beyond reciting the element of deliberate indifference and do not plausibly show that Plaintiff is entitled to relief. See Starr, 652 F.3d at 1216.

Plaintiff specifically alleges two incidents where Defendant Rich allegedly committed sexual batteries during the course of his employment against females who worked for Defendant County.[11]  (Id. at ¶¶ 21-23.) Plaintiff alleges that the incident with coworker 1 was reported to Defendant County prior to the instant incident. (Id. at ¶ 21.) However, this allegation only shows that Defendant County had knowledge of one incident of sexual assault involving Defendant Rich on the same day of the instant incident, which is not sufficient to plead deliberate indifference. Allegations that Defendant County was aware that Defendant Rich had committed a sexual battery prior to the instant incident are similar to the allegations in Flores, where the Ninth Circuit found that isolated incidents by a deputy other than the defendant deputy were insufficient to show a "pattern of similar constitutional violations" to show deliberate indifference on the part of Defendant County. See Flores, 758 F.3d at 1159.

Plaintiff does not allege that the incident with coworker 2 was reported to Defendant County or a supervisor prior to the instant incident. Plaintiff alleges that following the incident with coworker 2 and prior to the instant incident, coworker 2 told another correctional officer, "Please don't leave me alone with him again," and the other correctional officer responded, "…That's why I came back." (Id. at ¶¶ 22-23.) Plaintiff argues that this statement by the other correctional officer shows that the other correctional officer had actual and constructive knowledge of Defendant Rich's propensities to assault. (Id. at ¶ 23.) However, this is

---

[11] As discussed above, the incidents involving coworker 1 and coworker 2 occurred on the same day as the instant incident.

insufficient to plead deliberate indifference, as one officer making a statement that could be viewed as that officer knowing about Defendant Rich's propensities to sexually assault is insufficient to show that Defendant County had the knowledge required for deliberate indifference. Further, Plaintiff conceded at the hearing that Defendant County itself did not have actual or constructive knowledge of the incident with coworker 2 prior to the instant incident.

Plaintiff alleges that supervisors at JLCF, coworkers of Defendant Rich, Defendant County, and others had actual and constructive knowledge prior to the instant incident of Defendant Rich's propensities, prior sexual batteries, and the fact that Defendant Rich utilized secluded settings to accomplish sexual harassment and sexual batteries, but they failed to protect female inmates, including Plaintiff, and female coworkers from Defendant Rich, instead continuing to permit Defendant Rich to have unrestricted and secluded access to female inmates and female coworkers. (Id. at ¶ 26.) As discussed above, the allegation that Defendant County had actual and constructive knowledge without more factual detail is insufficient.

Plaintiff also alleges that Defendant Rich was the subject of a number of IA investigations by Defendant County prior to the incidents involving Plaintiff, coworker 1, and coworker 2. (Id. at ¶ 24.) Regarding these IA investigations, Plaintiff alleges that "[o]n information and belief, at least some of such incidents involved sexual misconduct, including, but not limited to sexual harassment, or sexual batteries of female inmates or co-workers." (Id.)[12] Plaintiff's allegation regarding the IA investigations of Defendant Rich is phrased so that the incidents may have only involved sexual harassment of female inmates or co-workers. Therefore, based on the allegations in the first amended complaint, the IA investigations are not

---

[12] At the hearing, Defendant County stated that there were no IA investigations for Defendant Rich. The Court cannot take this assertion into account on the instant motion to dismiss, as the Court must look at the allegations contained in the complaint, material that is attached to the complaint, and evidence not attached to the complaint on which the complaint "necessarily relies." Hal Roach Studios, Inc., 896 F.2d at 1555 n.19; Corinthian Colleges, 655 F.3d at 999. When Plaintiff's counsel was asked at the hearing what the allegation regarding IA investigations is based on, he stated that Plaintiff does not know what the IA reports are based on and Plaintiff does not have any evidence that the IA investigations were involving sexual misconduct. Plaintiff's counsel believes that it was appropriate to make this allegation (FAC at ¶ 24) "on information and belief" because it is reasonable to allege that Defendant Rich who committed these three sexual assaults involving Plaintiff, coworker 1, and coworker 2, had committed sexual assaults prior to the day of the three incidents and felt comfortable repeating sexual misconduct. However, the Court finds that the fact that Defendant Rich committed these three incidents does not reasonably lead to the conclusion that there would be IA investigations against him involving sexual misconduct prior to the three incidents and is not a sufficient basis to make an allegation "on information and belief."

sufficiently similar to the violations alleged in the instant incident.

Plaintiff further alleges that prior to the instant incident, other correctional officers and Defendant County transport officers that worked at JLCF transporting female inmates to and from court had also previously committed nonconsensual sexual batteries in the course and scope of their employment with Defendant County and that Defendant County had both actual and constructive knowledge of at least some of such incidents. (Id. at 20.) Plaintiff's allegation regarding the other correctional officers and transport officers committing sexual assaults only states that Defendant County had both actual and constructive knowledge. Again, Plaintiff does not explain how Defendant County had actual or constructive knowledge.

Therefore, the Court finds that Plaintiff has not sufficiently alleged that Defendant County had knowledge, whether actual or constructive, of a pattern of similar constitutional violations by its officers. More importantly, the first amended complaint is devoid of facts to show deliberate indifference by Defendant County. The Court next addresses Plaintiff's arguments that Defendant County's other policies are sufficient to show that it acted with deliberate indifference.

### 1. Defendant County's Other Policies

Plaintiff argues that Defendant County's own policies show that it was aware of the risk of sexual assault between officers and inmates.[13] Plaintiff points to Defendant County's policy regarding opposite sex transports in medical emergencies (JTO Performance Module 13), which she contends shows that Defendant County was aware of the risk of inappropriate conduct between male guards and female inmates during transport.

In support of her argument that allegations of deliberate indifference can be based upon the policy of an entity even if there are no prior incidents, Plaintiff cites Castro, a failure to protect case where the Ninth Circuit affirmed jury instructions that did not require proof of a pattern of similar prior incidents. Castro, 833 F.3d at 1076-77. In Castro, Ninth Circuit found that, "[t]he County Board of Supervisors' affirmative adoption of regulations aimed at mitigating

---

[13] While Plaintiff argues that Defendant County's policy addressing the Prison Rape Elimination Act (JTO Performance Module 32) shows notice by Defendant County, JTO Performance Module 32 was not mentioned in the first amended complaint. Therefore, the Court does not further address Module 32.

the risk of serious injury to individuals housed in sobering cells, and a statement to the same effect in the station's manual, conclusively prove that the County knew of the risk of the very type of harm that befell Castro." Id. at 1077. The Los Angeles County Code incorporated chapters of the California Building Code which required an "an inmate-or sound-actuated audio monitoring system in ... sobering cells ... which is capable of alerting personnel who can respond immediately." Id. at 1076-77 (citing Cal. Bldg. Code tit. 24 § 1231.2.22 (2007)). The West Hollywood police station manual, which is the location of the incident at issue in Castro, also "mandate[d] that a sobering cell 'allow for maximum visual supervision of prisoners by staff." Castro, 833 F.3d at 1077. The West Hollywood police station manual also forbade the use of non-compliant sobering cells. Id. The sobering cell at the West Hollywood police station that was the subject of the case was non-compliant because it lacked all required padding and did not "allow for maximum visual supervision of prisoners by staff." Id.

As the Court noted at the hearing, the medical transports in medical emergencies can require the unclothing of the inmate to address a medical emergency whether that be CPR or some other medical procedure, a situation which would not necessarily apply to transporting an inmate to court. While both involve transporting inmates, the reason for the transport raises different potential for inmate contact. Module 13 is specifically addressing inmate transportation to the hospital in a medical emergency. Medical transports to the hospital in an emergency and transports from the court to the jail are not the same. The Court finds that Defendant County's policy requiring deputies to state the starting and ending mileage in opposite sex transports in medical emergencies (Module 13) is insufficient at the pleading stage to show that Defendant County was deliberately indifferent in opposite sex transports from court to JLCF. Next, the Court addresses whether Defendant County's actions after the instant incident are sufficient to allege deliberate indifference for the Monell claim.

2.    Defendant County's Actions After the Instant Incident

Although Plaintiff recognizes that Defendant Rich was terminated from his job with Defendant County, Plaintiff argues that Defendant County was deliberately indifferent because it did not change its policy regarding opposite sex transports from the court to JLCF after the

instant incident even though it revised Modules 13 and 32 in March 2015.  To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.' " Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting City of St. Louis, 485 U.S. at 127).  "We have found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation."  Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996).  Ratification generally requires more than acquiescence.  Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014).

At the hearing, Plaintiff argued that Grandstaff v. City of Borger, Tex., 767 F.2d 161 (5th Cir. 1985), shows that there is no need to show prior incidents where the conduct of the entity after the incident indicates a culture, custom, or practice.  Plaintiff asserts that the lack of a policy change was a key factor in the finding of liability in Grandstaff and that similarly, in the present case, there was no change in policy after the instant incident.  In Grandstaff, the Fifth Court found that"[t]he evidence does prove repeated acts of abuse on this night, by several officers in several episodes, tending to prove a disposition to disregard human life and safety so prevalent as to be police policy or custom."  Grandstaff, 767 at 171.  The Fifth Circuit also found:

> The disposition of the policymaker may be inferred from his conduct after the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that no changes had been made in their policies. If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger. If prior policy had been violated, we would expect to see a different reaction. If what the officers did and failed to do on August 11, 1981 was not acceptable to the police chief, changes would have been made.

Id.

The instant case is distinguishable from Grandstaff and other cases which are based on a ratification theory.  Here, Defendant Rich was terminated[14] and is now facing criminal

---

[14] Although Plaintiff does not allege in her first amended complaint that Defendant Rich was terminated following the instant incident, she also does not allege that he was not terminated and she states in her opposition to the motion to dismiss that he was terminated.

prosecution. The fact that Defendant County did not change its policies regarding opposite sex transports from court to JLCF after the instant incident is not sufficient to state a claim on a ratification theory. Further, Plaintiff does not clearly allege in the first amended complaint that Defendant County did not change its policy regarding opposite sex transport from court to JLCF after the instant incident. Therefore, the Court finds that Plaintiff has not sufficiently alleged a ratification theory.

### 3. Notice Based on General Information

Plaintiff also alleges that Defendant County was on constructive notice of officer-on-inmate sexual assaults in correctional facilities. Plaintiff does not provide any authority that allegations that cite to articles and statutes demonstrating the prevalence of sexual abuse of inmates by guards in correctional facilities are sufficient to show actual or constructive knowledge of a problem within a specific correctional facility. In Flores, where there was not a "pattern of similar constitutional violations by untrained employees," the Ninth Circuit found that not training officers not to sexually assault would not have patently obvious unconstitutional consequences. Flores, 758 F.3d at 1159 (citing Connick, 563 U.S. at 63.) Plaintiff attempts to use articles regarding statistics and accounts of officer-on-inmate sexual assault, and statutes addressing officer-on-inmate sexual assault to show the vulnerabilities of female inmates. Plaintiff argues that Defendant County knew the vulnerabilities of female inmates and allowed unsupervised opposite sex transports (transports of female inmates by one male officer) and permitted the transports to be without review and recording. Plaintiff's argument would, in essence, mean that every plaintiff sufficiently pleads the deliberate indifference element of a Monell claim against every entity in the United States for officer-on-inmate sexual assault because of statistics, articles, and statutes regarding officer-on-inmate sexual assault that are not specific to that entity or even the area that the entity is in.[15]

---

[15] The Court notes that one of the articles with data that Plaintiff cites in the first amended complaint provides that Merced County Jail authorities had no allegations of sexual victimization in 2011, but it does not affirmatively say that Merced County Jail authorities did or did not have allegations of sexual victimization in 2010 and 2009. See https://www.bjs.gov/index.cfm?ty=pbdetail&iid=4881 (last visited May 24, 2017). Merced County Jail was not part of the list of authorities with no allegations of sexual victimization in 2010 and 2009, but it was also not listed in the table for jails with allegations of sexual victimization reported by local jail authorities in 2010 and 2009. Id.

To the extent that Plaintiff is arguing that Plaintiff's <u>Monell</u> claim falls within the narrow circumstances of cases in which a pattern of similar violations might not be necessary to show deliberate indifference, Plaintiff's complaint fails to state a claim.  This case is distinguishable from the hypothetical that the Supreme Court has given "of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force."  <u>Connick</u>, 563 U.S. at 63 (citing <u>Canton</u>, 489 U.S. at 390 (internal citations and quotation marks omitted). The Court cannot say that the violation of federal rights in this case, the sexual assault of Plaintiff, is a "highly predictable" or "plainly obvious" consequence of Defendant County's action or inaction. The Court finds that there is no basis to conclude that Plaintiff has sufficiently pled that the unconstitutional consequences of failing to have a policy of two or more officers transporting opposite sex inmates, having a policy allowing one officer to transport opposite sex inmates, not recording times of transports, not using cameras to record transports, and the other policies and omissions that Plaintiff alleges in the first amended complaint are so patently obvious that Defendant County was deliberately indifferent.  <u>See</u> <u>Flores</u>, 758 F.3d at 1160.

Therefore, the Court finds that Plaintiff has not sufficiently pled that the facts available to entity policymakers put them on actual or constructive notice that the particular policy, custom, practice, or omission is substantially certain to result in the violation of the constitutional rights of their citizens.  <u>See</u> <u>Castro</u>, 833 F.3d at 1076 (quoting <u>Canton</u>, 489 U.S. at 396).  Accordingly, Plaintiff has failed to state a <u>Monell</u> claim against the County of Merced.  Although the Court has found that Plaintiff fails to state a <u>Monell</u> claim as she fails to allege sufficient facts for deliberate indifference, the Court will address Defendant County's argument regarding the inadequate hiring theory.

       4.    <u>Inadequacy of Hiring Theory</u>

Defendant County also argues that Plaintiff fails to allege any facts supporting her claim that Defendant County inadequately hired Defendant Rich, any Doe Defendants, and any other personnel under each supervisor defendant's supervision.  The Supreme Court found that in claims based on deficiencies related to hiring, "[o]nly where inadequate scrutiny of an

applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.' " Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 411 (1997). The first amended complaint does not contain any allegations concerning Defendant County's inadequacies in hiring Defendant Rich, any Doe Defendants, and any other personnel under each supervisor defendant's supervision. The first amended complaint does not allege any facts describing how Defendant County was deficient in the hiring of Defendant Rich, any doe Defendants, and any other personnel under each supervisor defendant's supervision. Therefore, the Court finds that Plaintiff has insufficiently alleged a Monell claim based on the hiring of Defendant Rich as she has not alleged any facts to support this claim.

Accordingly, the Court recommends that Defendant County's motion to dismiss the Monell claim be granted.

## E. Leave to Amend

The final inquiry regarding Defendant County's motion to dismiss is whether Plaintiff should be granted leave to amend her Monell claim.

Generally, leave to amend shall be freely given when justice so requires. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" Id. (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend should be freely given in the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. Id. at 1051-52. Absent prejudice, or a strong showing of the other factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. Id. at 1052. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." Id. at 1052 (citing Chang v. Chen, 80 F.3d

1293, 1296 (9th Cir. 1996)).

To the extent that new or different facts can be alleged to render her <u>Monell</u> claim cognizable, Plaintiff should be granted an opportunity to amend her <u>Monell</u> claim. Plaintiff will be given one final opportunity to amend. Accordingly, the Court recommends that Plaintiff be granted leave to amend.

<strong>V.</strong>

<strong>RECOMMENDATIONS</strong>

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant County's motion to dismiss the <u>Monell</u> claim be GRANTED with leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of these findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Within fourteen (14) days of service of any objections, any party may file a reply. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**May 26, 2017**__

_____
UNITED STATES MAGISTRATE JUDGE