# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY GONZALEZ, | Case No. 1:16-cv-01682-LJO-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT COUNTY OF MERCED'S MOTION TO DISMISS PLAINTIFF'S MONELL CLAIM AND GRANTING IN PART PLAINTIFF'S MOTION TO LIFT THE STAY |
| v. | |
| COUNTY OF MERCED, et al., | |
| Defendants. | |
| | (ECF Nos. 51, 52, 60, 61, 62, 63, 64, 67, 68, 71) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

On July 28, 2017, Defendant County of Merced ("Defendant County") filed a motion to dismiss Plaintiff's Monell[1] claim in the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The matter was referred to the undersigned for issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF No. 53.)

On August 23, 2017, Plaintiff filed a motion to lift the stay as to Defendant Gregory Rich ("Defendant Rich") and permit discovery. (ECF No. 62.) On March 21, 2017, the Court had granted Defendant Rich's motion to stay this action as to Defendant Rich, but not as to Defendant County of Merced unless and until an answer is filed by Defendant County. (ECF

---

[1] Monell v. Dep't of Soc. Servs. Of City of N.Y., 436 U.S. 658 (1978).

1

No. 29.)  The Court had also ordered a review hearing as to Defendant Rich, which has been continued several times.

On September 20, 2017, the Court held a hearing on the motion to dismiss and motion to lift the stay and also conducted a review hearing as to Defendant Rich for the motion to stay. Panos Lagos appeared for Plaintiff, Sanjay Schmidt appeared telephonically for Plaintiff, James Stone appeared for Defendant County, and Marshall Bluestone appeared for Defendant Rich. Having considered the moving, opposition and reply papers for the motions, the declarations and exhibits attached thereto, except as excluded below, arguments presented at the September 20, 2017 hearing, as well as the Court's file, the Court recommends that Defendant County's motion to dismiss be granted, Plaintiff's motion to lift the stay be granted in part, and a review hearing be scheduled in 60 days.

## I.

## BACKGROUND

On November 4, 2016, Plaintiff filed this action against Defendant County and Defendant Rich.  (ECF No. 1.)  On November 29, 2016, Defendant County filed a motion to dismiss.  (ECF No. 7.)  On December 20, 2016, Defendant Rich filed a motion to stay this action pending the resolution of the state criminal action against him.  (ECF No. 11.)  On February 1, 2017, the undersigned filed findings and recommendations recommending that Defendant County's motion to dismiss be granted with leave to amend and that Defendant Rich's motion to stay the action be granted as to Defendant Rich at this time.  The Court recommended the action not be stayed as to Defendant County until an answer is filed by Defendant County.  (ECF No. 25.)  On March 21, 2017, Chief Judge Lawrence J. O'Neill adopted the findings and recommendations.  (ECF No. 29.)  The Court also set a review hearing as to Defendant Rich before the undersigned for May 24, 2017, which has been continued several times.  (ECF Nos. 29, 38, 48, 59, 65.)

On April 4, 2017, Plaintiff filed her first amended complaint.  (ECF No. 30.)  On April 18, 2017, Defendant County filed a motion to dismiss the first amended complaint.  (ECF No. 31.)  On May 30, 2017, the undersigned filed findings and recommendations recommending that Defendant County's motion to dismiss be granted with leave to amend, which was adopted on

1    June 29, 2017.  (ECF Nos. 43, 46.)

2         On July 28, 2017, Defendant County filed a motion to dismiss the first amended

3    complaint and a request for judicial notice.[2]  (ECF Nos. 51, 52.)  On August 16, 2017, Plaintiff

4    filed her opposition to the motion to dismiss and a request for judicial notice.[3]  (ECF Nos. 60,

5    61.)  On August 23, 2017, Defendant County filed its reply in support of the motion to dismiss

6    and objections to Plaintiff's request for judicial notice.  (ECF Nos. 63, 64.)

7         On August 23, 2017, Plaintiff filed a motion to lift the stay and permit discovery.  (ECF

8    No. 62.)  On September 6, 2017, Defendant Rich and Defendant County filed oppositions to the

9    motion to lift the stay and permit discovery.  (ECF Nos. 67, 68.)  On September 13, 2017,

10   Plaintiff filed her reply.  (ECF No. 71.)[4]

## II.

## LEGAL STANDARD

13        Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

14   the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A

15   motion under Rule 12(b)(6) tests the legal sufficiency of a claim.  <u>Navarro v. Block</u>, 250 F.3d

---

[2]  The Court grants Defendant County's request to take judicial notice of the fact that Defendant Rich is being prosecuted in the Superior Court of California, County of Merced, for the incident alleged by Plaintiff.  <u>See</u> Fed. R. Evid. 201.  The Court also considers the excerpts of the testimony of Nanica Richard, Sgt. Tilley, and Blanca Cortez from the preliminary hearing as Plaintiff referred to the testimony of these witnesses from the preliminary hearing in the second amended complaint.  A court generally cannot consider material outside of the complaint when ruling on a motion to dismiss.  <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  However, the incorporation by reference doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document."  <u>U.S. v. Corinthian Colleges</u>, 655 F.3d 984, 999 (9th Cir. 2011).

[3]  The Court will consider the excerpts of Sgt. Tilley's testimony from the preliminary hearing, as discussed above.  The Court will also consider 42 U.S.C. § 15601, which is a part of the Prison Rape Elimination Act of 2003, as that section was referred to in the second amended complaint.  <u>See</u> <u>Corinthian Colleges</u>, 655 F.3d at 999.  However, the Court will not consider the excerpt from the June 2009 National Prison Rape Elimination Commission Report, the other sections of the Prison Rape Elimination Act of 2003, and a copy of a press release by the United States Department of Justice of the Justice Department's proposed rule in accordance with the Prison Rape Elimination Act as the second amended complaint does not necessarily rely on this evidence, and therefore it has not been incorporated by reference.  <u>Id.</u>  Further, this information is not relevant as it was not alleged in the second amended complaint.  Factual allegations not made in the complaint cannot be considered for purposes of a 12(b)(6) motion to dismiss, and therefore, the Court will not take judicial notice of it.  <u>See</u> <u>Schneider v. Cal. Dept. of Corrs.</u>, 151 F.3d 1194, 1198 n.1 (9th Cir. 1998).

[4]  Pursuant to a notice of errata that Plaintiff filed, the Court disregarded the first reply (ECF No. 70) that Plaintiff filed.

729, 732 (9th Cir. 2001). In deciding a motion to dismiss, the court is to accept as true "all material allegations of the complaint, . . . as well as all reasonable inferences to be drawn from them." Navarro, 250 F.3d at 732. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). While detailed factual allegations are not required, the factual allegations of the complaint must plausibly suggest an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Starr, 652 F.3d at 1216. Dismissal of the complaint is appropriate where the complaint fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

## III.

## ALLEGATIONS IN SECOND AMENDED COMPLAINT

On or about January 27, 2015, at about 9:40 p.m., Plaintiff was a pretrial detainee in the custody of Defendant County, and was being transported from the Merced County Courthouse to John Latorraca Correctional Facility ("JLCF") in a Defendant County vehicle driven by Defendant Rich. (SAC at ¶ 12, ECF No. 49.) One of Defendant Rich's responsibilities granted by Defendant County was driving inmates to and from their court appearances. (Id.)

Plaintiff was seated on one side of the vehicle with another female inmate. (Id. at ¶ 14.) A cage separated the female inmates' side from the male inmates' side. (Id.) After the male inmates were unloaded and gone from the vehicle, Defendant Rich directed Plaintiff to exit the vehicle. (Id. at ¶ 15 .) There was no second correctional officer present and there was no video surveillance system or other system of documentation to document incidents or deter misconduct by correctional officers. (Id.) Plaintiff asked "[f]or what?" and then proceeded to get up from her seat to go to the other side of the vehicle. (Id. at ¶ 16-17.) In order to move to the other side of the vehicle, Plaintiff had to turn her back to Defendant Rich as she utilized the vehicle's built in step-stool to help her get down to the ground. (Id. at ¶ 17.) There were no other correctional Officers around, and specifically, there were no female correctional officers around. (Id.)

Defendant County failed to require that Defendant Rich be equipped with a body camera or that there be some other camera or observation of his one-one-one, unsupervised contact with a female inmate. (Id.)

As she was on the step-stool part of the vehicle with her back to Defendant Rich, Defendant Rich deliberately, without consent, and in a constitutionally violative fashion reached his arm through her legs and grabbed her vaginal area. (Id.) Plaintiff responded with an emphatic question along the lines of, "what the …?" in an immediate, vigorous, loud, and protesting manner as she sat down where she was ordered to sit by Defendant Rich. (Id. at ¶ 18.) Defendant Rich remained silent. (Id.)

After Plaintiff seated herself, Defendant Rich, who was facing Plaintiff, groped Plaintiff again in her genital area. (Id.) Plaintiff was helpless and unable to defend herself because she was in full body shackles. (Id.)

Defendant Rich then drove Plaintiff to the female entrance to the JLCF. (Id. at ¶ 19.) Defendant Rich groped Plaintiff in the vaginal area as she was stepping out of the van. (Id.) Plaintiff did not physically resist, insult, threaten, touch, batter, or assault Defendant or fail to promptly obey any order prior to or after the alleged batteries. (Id. at ¶ 20.) Plaintiff felt helpless, violated, humiliated, and dehumanized by Defendant Rich's alleged batteries. (Id.)

Plaintiff alleges that when she first reported the incident to officials of Defendant County, she was told to keep quiet about the matter and not to discuss it with anyone. (Id. at ¶ 51.) She alleges that the instruction to Plaintiff by officials not to disclose the matter was pursuant to a custom, policy, or practice of Defendant County to intentionally minimize, conceal, prevent, or otherwise avoid the dissemination throughout Defendant County of information of such incidents and to attempt to avoid or limit documentation of any instances of guard-on-inmate sexual abuse. (Id.)

Plaintiff alleges that Merced County is a rural county, where distances between destinations are longer and there are a lot of secluded areas, which enables a male officer to take a detour or pull over in order to achieve a sexual assault on an inmate, so policymakers must be extra vigilant. (Id. at ¶ 13.)

Plaintiff alleges that prior to the instant incident, Defendant Rich had committed nonconsensual sexual batteries and engaged in sexually abusive and harassing behavior in the course and scope of his employment with Defendant County and that Defendant County knew, should have known, had constructive knowledge, or had reason to know of such conduct by Defendant Rich prior to the instant incident. (Id. at ¶¶ 21-22, 25-30.) The prior incidents were accomplished using the opportunities created to commit sexual batteries by the policies, or lack or inadequacy thereof, created, executed, perpetuated, and/or facilitated by Defendant County. (Id.)

Plaintiff provides specific allegations for two incidents of alleged sexual batteries by Defendant Rich. (Id. at ¶¶ 25-26.) Plaintiff alleges that at, before, or around 10:00 a.m. on January 27, 2015, Defendant Rich unlawfully touched a female (coworker 1).[5] (Id. at 25.) This individual was an assistant/medical clerk at JLCF in the jail medical division who worked pursuant to a contract between Defendant County and the California Forensic Medical Group, Inc. ("CFMG"). (Id.) Plaintiff alleges that Defendant Rich unlawfully and without consent groped coworker 1 in the left breast area and accomplished this by utilizing his position to gain private access to coworker 1 in circumstances that provided seclusion. (Id.) This incident was reported shortly thereafter to coworker 1's supervisor, who later reported it to others, including officials of Defendant County. (Id.) Plaintiff alleges that Defendant Rich had also previously engaged in inappropriate verbal conduct with coworker 1 on a repeated basis. (Id.)

Plaintiff also alleges that during the same day of the instant incident, but prior to the instant incident, Defendant Rich committed a sexual battery against a female correctional officer at JLCF employed by Defendant County ("coworker 2"). (Id. at ¶ 26.) Just as he waited until he had an opportunity to commit the sexual battery against Plaintiff, Defendant Rich waited until he was alone with coworker 2 in a room at JLCF. (Id.) Defendant Rich asked coworker 2, "Let me touch your butt, let me touch your butt," and then after being refused, asked her, "Let me lick your clit." (Id.) After sexually harassing coworker 2 and being refused, Defendant Rich grabbed

---

[5] Although this female worked for Defendant County by virtue of a contract between Defendant County and CFMG, for purposes of this order, the Court refers to her as coworker 1.

her in the left buttocks area.  (Id.)  Plaintiff contends this incident was due to Defendant County's failure—and Defendant Rich's knowledge of such failure—to protect female employees and female inmates from him and others.  (Id.)  Defendant Rich utilized his position of authority and the access to areas where he would be alone with female coworkers and female inmates to sexually harass and unlawfully and without consent grab the left buttocks of coworker 2.  (Id.)  After the incident with coworker 2, but before the instant incident, coworker 2 told another employee of Defendant County at JLCF ("coworker 3") that Defendant Rich had done something highly inappropriate to her, pleading, "Please don't leave me alone with him again." (Id.)  Coworker 3 responded, "…That's why I came back," which coworker 2 believed indicated that coworker 3 knew of other sexually inappropriate contact by Defendant Rich against others and Defendant Rich's propensities to engage in sexually inappropriate conduct.  (Id. at ¶¶ 26-27.) Plaintiff alleges that coworker 3's response implied and suggests that Defendant Rich's propensities were known within JLCF, and suggests that other correctional officers and "likely supervisors" had actual and constructive knowledge of Defendant Rich's "propensities to commit such sexual batteries, and to touch women inappropriately or otherwise sexually harass them."  (Id. at 27.)  On the same day as the instant incident, coworker 2 also said to coworker 3, "what's wrong with him, he's gross."  (Id. at 26.)

Plaintiff alleges that at some time coworker 3 made a formal written complaint to a supervisor, Sgt. Tilley, regarding Defendant Rich engaging in sexually abusive and harassing behavior at JLCF, such as going through repeated masturbation motions in front of her despite her protests.[6]  (Id. at 21.)  Sgt. Tilley related this information to Lt. Jason Goins, who later became the Undersheriff for Defendant County.  (Id.)  According to coworker 3, there were several times where Defendant Rich groped himself in front of her in the control room, which is a secluded area, by placing his hand on his private area and thrusting his pelvis around.  (Id.) After conferring with Lt. Goins, Sgt. Tilley chose not to investigate coworker 3's complaint further, even though there was a mandatory duty to investigate.  (Id.)

---

[6] While the second amended complaint states that this was prior to the instant incident, at the hearing, Plaintiff's counsel admitted that it is unclear when the complaint regarding the incident involving Defendant Rich and coworker 3 happened, and that he thinks it probably happened after the instant incident.

1    Sgt. Tilley received complaints about Defendant Rich before the instant incident, but Sgt.

2    Tilley interpreted them as personality conflicts he hears on a daily basis as a supervisor. (Id. at

3    22.)  Sgt. Tilley personally overheard Defendant Rich make sexually inappropriate comments

4    about other female correctional officers, but dismissed them as "shop talk." (Id.)  Sgt. Tilley

5    testified under oath that, "We sit around and talk about other officers or—or other women in

6    particular, yes. It's—it's a common occurrence." (Id.)  Plaintiff alleges that the "shop talk"

7    coupled with the failure to take action in response to coworker 3's report suggests that Defendant

8    County, including supervisors at JLCF, permitted, encouraged, and ratified a sexually charged

9    environment, emboldening Defendant Rich and others to act on their sexual urges. (Id.)

10    At the time of the instant incident, Defendant County failed to staff its jails at levels that

11    Sgt. Tilley thought they should be at, which was a problem during the 12 years that Sgt. Tilley

12    was there. (Id. at 23.)

13    At the time of the instant incident, Defendant County was experiencing "extreme"

14    problems with its video surveillance system, which supervisors, including Sgt. Tilley were

15    aware of, and correctional officers, including Defendant Rich, would have also been aware of.

16    (Id. at 24.)  The DVR surveillance system at JLCF was not recording to Defendant County's

17    DVR system. (Id.)  "Inferably, an Officer [sic] that wished to engage in sexual misconduct with

18    a female transport inmate, such as RICH, would be able to do so with the knowledge of where

19    there were, and were not, cameras, and with the knowledge that it would be not be recorded to

20    the COUNTY's DVR system." (Id.)

21    Defendant Rich had previously requested to touch coworker 2's butt, but she was placed

22    in fear of retaliation by Defendant Rich and others because she heard Defendant Rich state

23    several times that he had been through many internal affair investigations ("IAs"), and had

24    "gotten out of every single one of them." (Id. at ¶ 28.)  Plaintiff also alleges that Defendant

25    Rich's previous conduct in the presence of coworker 2 and others was physically intimidating to

26    coworker 2. (Id.)

27    After coworker 2 reported the alleged sexual assault by Defendant Rich, her work

28    environment at Defendant County became worse because she was subjected to hostility by

employees and correctional officers of Defendant County, which potentially included supervisors, who were supporters of Defendant Rich and/or his conduct, and subjected to intimidation by other employees of Defendant County.  (Id. at ¶ 29.)

Female correctional officers told coworker 2 that they were aware of other similar incidents of female deputies being sexually touched by Defendant Rich.  (Id. at ¶ 30.)  Plaintiff alleges that these reports by other females, the report by coworker 3, and the other information in the second amended complaint plausibly suggests that Defendant County knew, should have known, had constructive knowledge by virtue of the knowledge of its employees, or had reason to know of such conduct by Defendant Rich prior to the instant incident.  (Id.)

Coworker 2 testified that Defendant Rich made statements that Defendant Rich was the subject of a number of internal affair ("IA") investigations by Defendant County prior to the instant incident and incidents involving coworker 1 and coworker 2, but was exonerated by Defendant County in all of them.  (Id. at ¶ 31.)  Plaintiff alleges that coworker 3's report of the incident between she and Defendant Rich, which was not investigated and for which Defendant Rich was not disciplined or terminated, the accepted and ratified practice of engaging in sexually charged "shop talk" on a daily basis, reports by other female correctional officers being victimized by Defendant Rich, Defendant Rich stating that he had beat his IAs to coworker 2, and the sexual touching of coworker 1, coworker 2, and Plaintiff by Defendant Rich "taken cumulatively plausibly suggests that at least some of such prior IA incidents/investigations concerning Defendant Rich involved sexual misconduct, including, but not limited to sexual harassment, sexual batteries of female inmates or co-workers, or other inappropriate sexual behavior."  (Id.)  Plaintiff alleges that it is plausible based on Defendant Rich's comment to coworker 2 to infer that he communicated Defendant County's acquiescence in his misconduct in order to generate fear and potentially limit reporting of his misconduct.  (Id.)  Plaintiff alleges that Defendant County's acquiescence and failure to discipline Defendant Rich for the incident with coworker 3 even though Sgt. Tilley and Lt. Goins were informed about it encouraged and emboldened Defendant Rich to engage in sexual misconduct because it signaled to him that he would not be disciplined by Defendant County.  (Id.)

Plaintiff alleges based on the information stated above and because it would seem highly unlikely that Defendant Rich would decide one day out of the blue to start committing sexual batteries that it is plausible to infer that Defendant Rich had previously engaged in other sexually inappropriate or harassing conduct, and had previously committed nonconsensual sexual batteries in the course and scope of his employment with Defendant County and/or there were facts available to put Defendant County on notice of this.  (Id. at ¶ 32.)  Plaintiff alleges that if Defendant County had put proper policies in place and had not encouraged or permitted a "code of silence" among correctional staff, a culture that retaliated against or shunned correctional officers that reported misconduct, and a sexually charged culture that engaged in sexual "shop talk" daily, Defendant County would have known of at least some of such previous incidents by Defendant Rich.  (Id.)  Plaintiff also alleges that Defendant County's policies, customs, practices, or lack thereof coupled with information about Defendant Rich posed a substantial risk of serious harm to Plaintiff.  (Id.)

Plaintiff alleges that the information stated above plausibly suggests that supervisors at JLCF, coworkers of Defendant Rich, and officials of Defendant County had actual or constructive knowledge or reason to know of Defendant Rich's propensities and conduct, including inappropriate sexual behavior, sexual misconduct, and/or prior sexual batteries, and the fact that Defendant Rich utilized secluded settings to accomplish sexual harassment, sexual misconduct, indecent acts, and sexual batteries.  (Id. at ¶ 33.)  However, they failed to protect female inmates, including Plaintiff, and female coworkers from Defendant Rich, instead continuing to permit Defendant Rich to have unrestricted and secluded access to female inmates and female coworkers.  (Id.)

Defendant Rich's unlawful touching of coworker 1, coworker 2, and Plaintiff was part of a pattern of conduct by Defendant Rich to use his position of authority, power, and seclusion granted to him by Defendant County to commit sexual batteries against female coworkers and female inmates.  (Id. at ¶ 34.)  Plaintiff alleges that Defendant Rich and other male employees of Defendant County unlawfully touched female coworkers, inmates, and others by exerting the authority and access granted to them by Defendant County and by virtue of Defendant County's

failure to properly monitor their movements and activities and failure to implement policies that would prevent individuals like Defendant Rich from having secluded and prolonged contact with female inmates.  (Id.)

Plaintiff alleges that Defendant County was on both actual and constructive notice based on an abundance of evidence regarding the prevalence of officer-on-inmate sexual assault in correctional facilities and cites to four articles.  (Id. at ¶ 35.)  Plaintiff also alleges that the widespread knowledge within the corrections and justice systems, and of Defendant County in particular, of officer-on-female inmate assaults, Defendant County's policy failures evidence deliberate indifference to the reasonably foreseeable risk of sexual assault against female inmates by opportunistic male correctional officers, such as Defendant Rich.  (Id. at ¶ 36.)  Plaintiff alleges that the risks are recognized and codified in the Department of Justice's "Standards to Prevent, Detect, and Respond to Prison Rape," promulgated pursuant to the Prison Rape Elimination Act ("PREA"), and she cites to 42 U.S.C. 15601 as a congressional finding in the PREA that "experts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison."  (Id. at ¶¶ 48-49.)  Plaintiff alleges that Defendant County had actual knowledge, reason to know of, or should have known of the risk of the type of harm that befell Plaintiff and cites to several performance modules and policies of Defendant County.  (Id. at ¶ 55.)  Plaintiff alleges that Defendant County had specific reporting requirements for a deputy transporting an inmate for a medical emergency, but no such requirements were provided to deputies with respect to transportation of opposite sex inmates to and from the jail facility and the court.  (Id. at ¶ 59.)  Plaintiff alleges that based on 15 C.C.R. § 1027, Defendant County should have required that a female correctional officer be present with Defendant Rich and other male correctional officers during opposite-sex transports, and that there is a recognition that it is important to not leave female inmates solely in the care of male correctional officers in secluded circumstances such as transport vans where they are vulnerable to sexual assault.  (Id. at ¶ 56.)

Plaintiff alleges that Defendant County failed to require proper activity logs, or if such logs were required, by failing to properly review, audit, and/or oversee them and enforce the

policy requiring them, providing a second officer, providing video coverage, or providing procedures minimizing the risk such as unloading the female inmates first.  (Id. at 37.)

On or about April 21, 2015, Defendant Rich was charged with a felony violation of California Penal Code § 149 (assault by officer under color of authority) and a misdemeanor violation of Penal Code § 243.4(e)(1) (sexual battery) for the instant incident, and two additional misdemeanor violations of Penal Code § 243.4(e)(1) (sexual battery) for the incidents involving coworker 1 and coworker 2.  (Id. at ¶ 38.)

Plaintiff's first cause of action is against Defendant Rich for violation of 42 U.S.C. § 1983 for depriving Plaintiff of the right to privacy, right to be free from the unreasonable search and seizure of one's person, right to the equal protection of the laws, and right to one's liberty in bodily integrity.  (Id. at ¶¶ 41-46.)  Plaintiff's second cause of action is against Defendant County for a violation of 42 U.S.C. § 1983 based on the customs, policies, practices, and/or procedures or lack thereof of Defendant County based on Monell v. Dep't of Soc. Servs. Of City of N.Y., 436 U.S. 658 (1978).  (Id. at ¶¶ 47-62.)

**IV.**

**DISCUSSION**

**A.    Defendant County's Motion to Dismiss the Monell Claim Should be Granted**

Defendant County argues that the Monell claim should be dismissed because the Monell claim is devoid of non-conclusory facts to set forth the deliberate indifference element.  Plaintiff counters that Defendant County is ignoring Plaintiff's more than sufficient allegations which make the Monell claim plausible.

1.    Legal Standard for Monell Claim Against Defendant County

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting

Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)).  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution."  Carey v. Piphus, 435 U.S. 247, 253 (1978) (quoting Imbler v. Pachtman, 424 U.S. 409, 417 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  Baker, 443 U.S. at 140.  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed.  Albright, 510 U.S. at 271.  "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  Baker, 443 U.S. at 146.

Plaintiff's theory of liability against Defendant County is based upon municipal liability under Monell, 436 U.S. at 691.  Under Monell, 436 U.S. at 691, "a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor . . . in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy.  Id. at 694.  A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008).  "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.' "  Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)).

Municipal liability may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate.  See Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014); Price v.

Sery, 513 F.3d 962, 966 (9th Cir. 2008).

To impose liability against Defendant County here, Plaintiff must establish: (1) that she possessed a constitutional right of which she was deprived; (2) that the municipality had a policy or custom; (3) that this policy or custom "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy or custom is the "moving force behind the constitutional violation." City of Canton v. Harris, 489 U.S. 378, 389–91 (1989).[7]

A plaintiff who sets forth a Monell claim against an entity defendant must show that the entity acted with deliberate indifference to the constitutional rights of the plaintiff in adhering to a policy or custom or by acts of omission. See Castro v. County of Los Angeles, 833 F.3d 1060, 1068-69 (9th Cir. 2016) (quoting Canton, 489 U.S. at 392); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010). The Ninth Circuit has held that an objective standard of notice applies to Monell claims. See Castro, 833 F.3d at 1076. The objective deliberate indifference standard is met when a "plaintiff [ ] establish[es] that the facts available to [entity] policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." Id. (quoting Canton, 489 U.S. at 396) (emphasis added). Municipal liability cannot be premised on respondeat superior and it is not sufficient for a plaintiff to merely point to something that the city could have done to prevent the incident. Clouthier, 591 F.3d at 1250 (citing Canton, 489 U.S. at 392). A municipality is deliberately indifferent when the need for more or different action is "so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers... can reasonably be said to have been deliberately indifferent to the need." Canton, 489 U.S. at 390; Mortimer v. Baca, 594 F.3d 714, 723 (9th Cir. 2010).

Since Iqbal, courts have rejected conclusory Monell allegations that lack factual content from which one could plausibly infer Monell liability. See e.g., Rodriguez v. City of Modesto, 535 Fed. App'x 643, 646 (9th Cir. 2013) (unpublished) (affirming district court's dismissal of

---

[7] The Court notes that the issue in this motion is not whether Plaintiff has sufficiently pled that she possessed a constitutional right of which she was deprived. She has sufficiently pled that she possessed a constitutional right of which she was deprived.

Monell claim based only on conclusory allegations and lacking factual support); Via v. City of Fairfield, 833 F.Supp.2d 1189, 1196 (E.D. Cal. 2011) (collecting cases). In AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d 631, 637 (9th Cir. 2012), the Ninth Circuit held that pleadings in a case involving Monell claims are subject to the standard set forth in Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011). In Starr, the Ninth Circuit held that allegations in a complaint cannot simply recite the elements of a cause of action, "but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr, 652 F.3d at 1216. The allegations must also plausibly suggest an entitlement to relief, "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id.

2.  Analysis of Monell Claims

The Court has twice allowed Plaintiff to amend her complaint to attempt to sufficiently plead a Monell claim against Defendant County. While Plaintiff has included more factual allegations to support her Monell claim, it has become unclear what theories Plaintiff bases her claim on. The Court does its best to set forth and address the theories of Plaintiff's Monell claim.

It appears that Plaintiff is alleging five theories for her Monell claim: 1) Failure to Train; 2) Inadequacies in Hiring; 3) Ratification of Defendant Rich's conduct in the instant incident by a final policymaking official; 4) A custom or practice; and 5) Inadequacies in the transportation policies. First, the Court discusses the failure to train, which is a theory that the Court has discussed at length with the prior motions to dismiss.

a.  **Failure to Train**

Plaintiff's second amended complaint alleges a failure to train theory. Defendant County argues that this case is similar to Flores v. County of Los Angeles, 758 F.3d 1154 (9th Cir. 2014). In Flores, the Ninth Circuit upheld a district court's dismissal for Plaintiff's failure to state a Monell claim for failure to train. In Flores, the plaintiff "alleged that defendants 'failed to implement proper training to protect women to ensure that Sheriff's [d]eputies do not sexually assault women that … [they] come into contact with at the Vehicle Inspection Area.' " Flores,

758 F.3d at 1157.  The plaintiff "proposed additions to the Sheriff's Department Manual that would instruct deputies that they 'shall not sexually harass or sexually attack women with whom they come into contact.' "  Id.  The Ninth Circuit found that "[t]he isolated incidents of criminal wrongdoing by one deputy other than Deputy Doe 1 do not suffice to put the County or Baca on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.' "  Id. at 1159 (quoting Connick v. Thompson, 563 U.S. 51, 62 (2011).  There was not a "pattern of similar constitutional violations by untrained employees." Flores, 758 F.3d at 1159 (citing Connick, 563 U.S. at 63.)  Although there is a "narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference," the Ninth Circuit found that the failure to train police officers not to commit sexual assault did not have patently obvious unconstitutional consequences.  Flores, 758 F.3d at 1159-1160 (quoting Connick, 563 U.S. at 63).

In this action, the alleged constitutional violation is similar to Flores.  In both cases, a plaintiff was allegedly sexually assaulted by an employee of the defendant entity.  While the sole claim in Flores was based on a failure to train officers not to commit sexual assaults, here, Plaintiff alleges other theories of Monell liability in addition to a failure to train theory.  In her opposition to the motion to dismiss, Plaintiff states that the issue in this matter is one of failed supervision, and policies that created the opportunity for the assault.  Plaintiff states that the "Monell allegations at issue (in Flores) failed with or without a pattern because the problem was not *training*; training to prevent sexual assaults is not required." (ECF No. 60 at 5.)[8]  Plaintiff concedes that this claim is not being brought based on an inadequate training theory and that an inadequate training to prevent sexual assault claim is not plausible.  To the extent that Plaintiff's second amended complaint alleges a Monell claim based on an inadequate training theory, the inadequate training theory claim should be dismissed.  The Court next discusses Plaintiff's theory that Defendant County inadequately hired Defendant Rich, Doe Defendants, and other personnel under each supervisory defendant.

---

[8] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

### b.    Inadequacies in Hiring

The Court has previously found that Plaintiff has failed to allege a <u>Monell</u> claim based on the hiring of Defendant Rich.   In Plaintiff's second amended complaint, she alleges that Defendant County failed to properly and adequately hire Defendant Rich, Doe Defendants, and any other personnel under each supervisory defendant's supervision.   (SAC at ¶¶ 60-61.) Plaintiff fails to allege any facts supporting her claim that Defendant County inadequately hired Defendant Rich, any Doe Defendants, and any other personnel under each supervisory defendant's supervision.   The Supreme Court found that in claims based on deficiencies related to hiring, "[o]nly where inadequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.' "   <u>Board of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 411 (1997).   The second amended complaint does not allege any facts describing how Defendant County was deficient in the hiring of Defendant Rich, any doe Defendants, and any other personnel under each supervisory defendant's supervision.   Therefore, the Court finds that Plaintiff has failed to allege a <u>Monell</u> claim based on the hiring of Defendant Rich or other personnel as she has not alleged any facts to support this claim.   Thus, the deficiencies in hiring claim should be dismissed.   The Court next addresses a ratification theory.

### c.    Ratification

It is unclear from Plaintiff's second amended complaint whether she is alleging a <u>Monell</u> claim based on a theory that the authorized policymakers ratified Defendant Rich's conduct in the instant incident.   To the extent that Plaintiff is alleging a <u>Monell</u> claim based on ratification by the authorized policymakers of Defendant Rich's conduct in the instant incident, Plaintiff has not sufficiently alleged a ratification theory.   Plaintiff alleges that no procedure or prophylactic steps were taken by Defendant County after the instant incident to assure that on-duty transporting deputies did not violate Defendant County's legal duty to keep its prisoners free from sexual abuse.

To show ratification, a plaintiff must prove that an official with final policy-making authority approved a subordinate's decision or action and the basis for it. Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014). Stated differently, a final policymaker must make a deliberate choice to endorse the subordinate's actions in order for the municipality to be liable. Id. "The policymaker must have knowledge of the constitutional violation and actually approve it," and a "mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). Similarly, the "mere failure to discipline [a subordinate] does not amount to ratification of [the subordinate's] allegedly unconstitutional actions." Sheehan, 743 F.3d at 1231.

Here, Defendant Rich was terminated[9] and is now facing criminal prosecution for the instant incident. Plaintiff does not allege that Defendant Rich was allowed to continue working after the instant incident. The fact that Defendant County did not change its policies regarding opposite sex transports from court to JLCF after the instant incident is not sufficient to state a claim on a ratification theory. There are no facts alleged by which the Court can reasonably infer that Defendant County ratified the conduct of Defendant Rich. See Iqbal, 556 U.S. at 678. Therefore, the Court finds that Plaintiff has failed to allege a ratification theory, and to the extent that she alleges a ratification theory claim, it should be dismissed. The Court next discusses whether Plaintiff has sufficiently pled a Monell claim based on an unconstitutional custom or practice of Defendant County.

### d. Unconstitutional Custom or Practice

Next, it appears that Plaintiff is alleging that the alleged sexual assault happened as part of Defendant County's unconstitutional custom or practice of allowing inappropriate sexual behavior. Plaintiff alleges that Defendant County failed to properly supervise, investigate, and/or discipline officers for inappropriate sexual behavior. As the Court stated at the hearing,

---

[9] Although Plaintiff does not allege in her second amended complaint that Defendant Rich was terminated following the instant incident, she does not allege that he was not terminated. The Court notes that she previously stated in her opposition to the motion to dismiss the first amended complaint that Defendant Rich was terminated, and at the September 20, 2017 hearing, her counsel referred to Defendant Rich being terminated when discussing the timing of a report of another incident.

1  Defendant Rich's alleged conduct is reprehensible, but the question is whether Plaintiff has
2  sufficiently alleged the <u>Monell</u> claim, and specifically, deliberate indifference against Defendant
3  County.

4      A "custom" is a "widespread practice that, although not authorized by written law or
5  express municipal policy, is so permanent and well-settled as to constitute a custom or usage
6  with the force of law." <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988); <u>Los Angeles Police</u>
7  <u>Protective League v. Gates</u>, 907 F.2d 879, 890 (9th Cir. 1990). "Liability for improper custom
8  may not be predicated on isolated or sporadic incidents; it must be founded upon practices of
9  sufficient duration, frequency and consistency that the conduct has become a traditional method
10  of carrying out policy." <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996). Nonetheless, the
11  Ninth Circuit has "long recognized that a custom or practice can be inferred from widespread
12  practices or "evidence of repeated constitutional violations for which the errant municipal
13  officers were not discharged or reprimanded." <u>Hunter v. County of Sacramento</u>, 652 F.3d 1225,
14  1233-34 (9th Cir. 2011) (quoting <u>Nadell v. Las Vegas Metro. Police Dep't</u>, 268 F.3d 924, 929
15  (9th Cir. 2001)) (internal quotation marks omitted). "*[E]vidence* of inaction—specifically,
16  failure to investigate and discipline employees in the face of widespread constitutional
17  violations—can support an inference that an unconstitutional custom or practice has been
18  unofficially adopted by a municipality." <u>Hunter</u>, 652 at 1234 n. 8 (emphasis in original).
19  However, the complaint "must contain sufficient allegations of *underlying facts* to give fair
20  notice and to enable the opposing party to defend itself effectively" and must plausibly suggest
21  an entitlement to relief. <u>Starr</u>, 652 F.3d at 1216 (emphasis added).

22      As in prior complaints, Plaintiff makes several allegations regarding Defendant Rich's
23  conduct and investigations of Defendant Rich's conduct prior to the instant incident to show that
24  there was a pattern of conduct. Plaintiff alleges in the second amended complaint that prior to
25  the instant incident, Defendant Rich had committed nonconsensual sexual batteries and engaged
26  in sexually abusive and harassing behavior in the course and scope of his employment with
27  Defendant County and that Defendant County knew, should have known, had constructive
28  knowledge, or had reason to know of such conduct by Defendant Rich prior to the instant

incident. (SAC at ¶¶ 21-22, 25-30.) Plaintiff again alleges that Defendant Rich committed sexual batteries against coworker 1 and coworker 2 on the same date as the instant incident. (Id. at ¶¶ 21-22.) Plaintiff adds a new allegation that Defendant Rich groped himself in front of coworker 3, but it is unclear as to when the incident involving coworker 3 was reported, although Plaintiff's counsel states that it was probably reported after the instant incident.[10] (Id. at ¶¶ 21, 25, 26.) Therefore, these facts indicate that Defendant Rich allegedly committed two sexual batteries on the same day as the instant incident and that a third incident happened at an unknown time and was probably reported after the instant incident. These facts are insufficient to allege a widespread practice or repeated constitutional violations for which Defendant Rich was not discharged or reprimanded or that the County had actual or constructive notice subjecting them to Monell liability.

Next, the Court discusses the allegations involving other inappropriate sexual behavior by Defendant Rich. Plaintiff alleges that Sgt. Tilley personally overheard Defendant Rich make sexually inappropriate comments about other female correctional officers, but dismissed them as "shop talk." (SAC at ¶ 22.) This fact is insufficient to plead that Defendant County had a custom or practice of allowing sexual batteries of females, or even sexual harassment of females. It is too attenuated to say that a custom or practice of "shop talk" is the moving force behind the alleged sexual battery of Plaintiff, a detainee being transported by Defendant Rich.

Plaintiff alleges that after the incident with coworker 2 and Defendant Rich on the same day as the instant incident, coworker 2 told coworker 3 that Defendant Rich had done something highly inappropriate to her. (SAC at ¶ 26.) Plaintiff alleges that coworker 3's response implied knowledge of Defendant Rich's propensities to engage in sexually inappropriate conduct and plausibly suggests that Defendant Rich's propensities were known within JLCF and that likely supervisors had actual and constructive knowledge of the propensities. (Id.) However, it is not

---

[10] At the hearing, Plaintiff's counsel admitted that paragraph 21 of the second amended complaint is inaccurate because it is not clear that the report to Defendant County's supervisors happened prior to the instant incident. The Court appreciates Plaintiff's counsel's candor. Plaintiff's counsel stated that the report of the incident involving coworker 3 was more than likely after the incident, but it is unclear. He also could not say that it is definitely after the incident. He asserted that Plaintiff should be able to do discovery on that issue. As Plaintiff's counsel did not actually concede that the report was after the instant incident, the Court reviews this allegation in light of Plaintiff alleging that it is "unclear" as to when the report happened, but probably after the instant incident.

plausible that coworker 3 indicating that she knows of Defendant Rich's propensities means that
supervisors had actual or constructive knowledge of the propensities.

Plaintiff also alleges that Defendant Rich was the subject of a number of IA
investigations by Defendant County prior to the incidents involving Plaintiff, coworker 1, and
coworker 2, but that he was exonerated by County based on Defendant Rich's statements. (Id. at
¶ 31.) Plaintiff alleges that coworker 2 heard Defendant Rich state several times that he had been
through many IAs and gotten out of every single one of them. (Id. at 28.) Regarding these IA
investigations, Plaintiff alleges that it is plausible to suggest that at least some of such prior IA
incidents/investigations concerned sexual misconduct, including, but not limited to sexual
harassment, sexual batteries of female inmates or coworkers, or other inappropriate sexual
behavior. (Id. at 31.) However, the Court does not find it plausible that the subject of the IAs
that Defendant Rich alleges he beat involved sexual misconduct just because Defendant Rich is
alleged to have committed the incidents involving coworkers 1, 2, and 3, Defendant Rich
allegedly committed the incident involving Plaintiff, Defendant Rich engaged in shop talk on a
daily basis, the allegation that female correctional officers told coworker 2 that other female
correctional officers had been touched by Defendant Rich, and the allegation that Defendant
Rich had related that he beat his IAs to coworker 2.

In addition, Plaintiff alleges that coworker 2 was subjected to previous sexual harassment
by Defendant Rich, but coworker 2 was placed in fear of retaliation because of Defendant Rich
stating that he had gotten out of IAs. (Id.) She alleges other facts regarding ideas of retaliation
and a code of silence. She alleges that coworker 2's work environment at Defendant County
became worse after reporting the incident involving her and Defendant Rich on January 27,
2015, because she was subjected to hostility by fellow employees of Defendant County and
correctional officers, which potentially included supervisors. (Id. at ¶ 29.) Plaintiff alleges that
Defendant County knew, should have known, or had reason to know of at least some of such
previous incidents of Defendant Rich, including nonconsensual sexual batteries in the course and
scope of his employment with Defendant County, if Defendant County had put proper policies in
place and had not encouraged or permitted a "code of silence" among correctional staff and had

not encouraged or permitted a culture that retaliated against or shunned correctional officers that reported misconduct. (Id. at ¶ 32.) However, Plaintiff does not explain how coworker 2's work environment became worse after she reported the incident, and she only alleges that the hostility was potentially by supervisors. The fact that a fellow employee may have intimidated coworker 2 or subjected her to hostility after she reported the alleged sexual assault by Defendant Rich does not show that Defendant County was aware of any conduct or that Defendant County allowed retaliation to occur.

Plaintiff also alleges that coworker 2 said that there are female correctional officers that have confided to her about their awareness of other similar incidents of female deputies being sexually touched by Defendant Rich. (Id. at ¶ 30.) Plaintiff alleges that it is plausible to infer that Defendant Rich had engaged in other sexually inappropriate or harassing conduct, and had previously committed nonconsensual sexual batteries in the course and scope of his employment with Defendant County. (Id. at ¶ 32.) The allegation regarding other female officers confiding in coworker 2 that they were aware of other female deputies being sexually touched by Defendant Rich is not sufficient to plead actual or constructive knowledge on the part of Defendant County. There is no indication in this factual allegation or anywhere else in the second amended complaint that these female deputies who were touched by Defendant Rich reported the conduct to any supervisors at Defendant County or that anyone else reported it to any supervisors or anyone at Defendant County. There are no facts alleged that these women were afraid to report the sexual touching by Defendant Rich.

Plaintiff also alleges that Defendant County told her to keep quiet about the instant incident, and not to discuss it with anyone when she reported it. (Id. at ¶ 51.) She alleges that this was an attempt to minimize, conceal, prevent, or avoid the dissemination throughout Defendant County of information of such incidents and that Defendant County hoped that by limiting the documentation of such incidents it could deny knowledge of such incidents later. (Id.) However, Plaintiff does not allege that the instant incident was not documented. Plaintiff only alleges that she was told to keep quiet about the matter and not discuss it with anyone. Plaintiff does not allege that there were other incidents where Defendant County gave a similar

instruction, and as discussed above, there are no factual allegations that other incidents had been reported to Defendant County prior to the instant incident.[11]   Here, Defendant Rich was criminally charged for the instant incident.  (Id. at ¶ 38.)  While Plaintiff states that being told to keep quiet about the instant incident was because of Defendant County's attempts to minimize or conceal information in an attempt to cover it up, the Court finds that the plausible inference of Plaintiff being told not to discuss this incident was to avoid interference with any internal affairs investigation and/or criminal investigation as Defendant Rich was terminated and criminally charged. More facts would be necessary to lead to Plaintiff's plausible interpretation,

Plaintiff further alleges it is plausibly suggested by the evidence that other male employees of Defendant County unlawfully touched females, including coworkers, inmates, and others.  (Id. at ¶ 34.)  However, there are no facts alleged by which it is plausible to infer that other correctional officers unlawfully touched females.  Plaintiff has not sufficiently alleged that there was a practice by male correctional officers of Defendant County of sexually assaulting females.

Therefore, the Court finds that Plaintiff has not sufficiently alleged that Defendant County allowed a custom or practice of sexual assaults to occur, such as by not investigating or disciplining reports of sexual assault, and that this basis of the claim should be dismissed.[12] Next, the Court discusses Plaintiff's allegations of deficiencies in the policies of Defendant County regarding opposite-sex transports.

### e. Deficient Policies

Lastly, Plaintiff alleges that Defendant County's policy regarding opposite-sex transports was deficient and that Defendant County should have had a policy requiring the presence and supervision of at least two correctional officers, one of each sex, when transporting inmates to and from the Merced County Courthouse and the JLCF; should have had video monitoring; should have required proper activity logs, or if such logs were required, should have properly

---

[11] Further, to the extent that Plaintiff attempts to allege this as its own custom, there are no allegations of how this alleged custom itself was a moving force in Plaintiff's injuries.

[12] The Court also notes that Plaintiff has not sufficiently alleged a custom or practice of sexual harassment by male correctional officers.

1  reviewed, audited, and/or oversaw them; or should have had a procedure of unloading the female
2  inmates first.

3      As noted above, Plaintiff has not sufficiently alleged that Defendant County knew or
4  should have known about any prior similar incidents involving Defendant Rich or other officers
5  at Defendant County.  Although Plaintiff is correct that <u>Monell</u> liability based on deficiencies in
6  a policy does not require a pattern of similar violations to show deliberate indifference, there
7  must still be deliberate indifference.  As stated above, the objective deliberate indifference
8  standard is met when a "plaintiff [ ] establish[es] that the facts available to [entity] policymakers
9  put them on actual *or constructive notice* that the particular omission is substantially certain to
10 result in the violation of the constitutional rights of their citizens."  <u>Castro</u>, 833 F.3d at 1076
11 (quoting <u>Canton</u>, 489 U.S. at 396) (emphasis added).  Here, the question is not whether sexual
12 assaults occur, but whether Defendant County had actual or constructive notice that the particular
13 deficiencies alleged pose a substantial risk of serious harm to detainees being transported to and
14 from the Merced County Courthouse and the JLCF.

15     In support of her argument that allegations of deliberate indifference can be based upon
16 the policy of an entity even if there are no prior incidents, Plaintiff cites <u>Castro</u>, a failure to
17 protect case where the Ninth Circuit affirmed jury instructions that did not require proof of a
18 pattern of similar prior incidents.  <u>Castro</u>, 833 F.3d at 1076-77.  In <u>Castro</u>, a <u>Monell</u> case by a
19 pretrial detainee who was placed in a sobering cell that lacked audio monitoring and video
20 surveillance, the Ninth Circuit affirmed jury instructions that did not require proof of a pattern of
21 similar prior incidents.  <u>Castro</u>, 833 F.3d at 1076-77.  In <u>Castro</u>, the Ninth Circuit found that,
22 "[t]he County Board of Supervisors' affirmative adoption of regulations aimed at mitigating the
23 risk of serious injury to individuals housed in sobering cells, and a statement to the same effect in
24 the station's manual, conclusively prove that the County knew of the risk of the very type of
25 harm that befell <u>Castro</u>."  <u>Id.</u> at 1077.  The Los Angeles County Code incorporated chapters of
26 the California Building Code which required an "an inmate-or sound-actuated audio monitoring
27 system in . . . sobering cells . . . which is capable of alerting personnel who can respond
28 immediately."  <u>Id.</u> at 1076-77 (citing Cal. Bldg. Code tit. 24 § 1231.2.22 (2007)).  The West

Hollywood police station manual, which is the location of the incident at issue in <u>Castro</u>, also "mandate[d] that a sobering cell 'allow for maximum visual supervision of prisoners by staff." <u>Castro</u>, 833 F.3d at 1077. The West Hollywood police station manual also forbade the use of non-compliant sobering cells. <u>Id.</u> The sobering cell at the West Hollywood police station that was the subject of the case was non-compliant because it lacked all required padding and did not "allow for maximum visual supervision of prisoners by staff." <u>Id.</u>

In contrast, here, Plaintiff does not point to any laws, regulations, policies, or other documents which require the measures or things that Plaintiff is alleging Defendant County's policies should have included.

Plaintiff points to other policies of Defendant County in an attempt to show deliberate indifference. Plaintiff again points to Defendant County's policy regarding opposite sex transports in medical emergencies (JTO Performance Module 13), which she contends shows that Defendant County was aware of the risk of inappropriate conduct between male guards and female inmates during transport.

The Court reiterates its prior finding in the May 30, 2017 findings and recommendations, which were adopted by the district judge:

> As the Court noted at the hearing, the medical transports in medical emergencies can require the unclothing of the inmate to address a medical emergency whether that be CPR or some other medical procedure, a situation which would not necessarily apply to transporting an inmate to court. While both involve transporting inmates, the reason for the transport raises different potential for inmate contact. Module 13 is specifically addressing inmate transportation to the hospital in a medical emergency. Medical transports to the hospital in an emergency and transports from the court to the jail are not the same. The Court finds that Defendant County's policy requiring deputies to state the starting and ending mileage in opposite sex transports in medical emergencies (Module 13) is insufficient at the pleading stage to show that Defendant County was deliberately indifferent in opposite sex transports from court to JLCF.

(ECF No. 43 at 19.)

Plaintiff now also alleges deliberate indifference based on Defendant County's policy addressing the Prison Rape Elimination Act (JTO Performance Module 32); Merced County Sheriff's Office Corrections Division, Transport Unit Policy 05.01; Merced County's Sheriff's Office, Search & Seizure Policy 322 at 322.2; and Merced County's Disciplinary Policy 340.

(SAC at ¶ 55.)  Upon review of these policies of Defendant County that were attached to the second amended complaint, the Court finds that none of these policies required or even suggested the measures that Plaintiff alleges Defendant County should have taken to protect detainees.  It is established that the "facts available to [entity] policymakers must put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens."  Castro, 833 F.3d at 1076 (quoting Canton, 489 U.S. at 396) (emphasis added).  Here, these policies do not address the idea of having two correctional officers, video monitoring, proper activity logs, or a procedure of unloading the female inmates first when transporting female inmates from court to the jail, or even at all times.  Therefore, these policies do not put policymakers of Defendant County on actual or constructive notice regarding the particular omission that Plaintiff alleges, which is the idea of having two correctional officers, video monitoring, proper activity logs, or a procedure of unloading the female inmates first when transporting female inmates from court to the jail.  Id.

In addition, Plaintiff alleges that notice is based on articles, data, findings, analyses, and conclusions in articles.  Plaintiff again attempts to use the same four articles regarding statistics and accounts of officer-on-inmate sexual assault.[13]  Plaintiff now cites to the Department of Justices' "Standards to Prevent, Detect, and Respond to Prison Rape", and specifically, 28 C.F.R. § 115.17, hiring and promotion decisions, and 42 U.S.C. § 15601, which are findings in the chapter titled Prison Rape Elimination, to show the risk of sexual assaults in jails.  (SAC at ¶¶ 48, 49.)  Plaintiff argues that Defendant County knew the vulnerabilities of female inmates and allowed unsupervised opposite sex transports (transports of female inmates by one male officer) and permitted the transports to be without review and recording.  Plaintiff did not cite to other sections of 28 C.F.R. § 115 in the second amended complaint, so the Court only reviews 28 C.F.R. § 115.17.  Upon review of the articles and statistics that Plaintiff cites in the second

---

[13] The Court notes that one of the articles with data that Plaintiff cites in the second amended complaint provides that Merced County Jail authorities had no allegations of sexual victimization in 2011, but it does not affirmatively say that Merced County Jail authorities did or did not have allegations of sexual victimization in 2010 and 2009.  See https://www.bjs.gov/index.cfm?ty=pbdetail&iid=4881 (last visited September 26, 2017).  Merced County Jail was not part of the list of authorities with no allegations of sexual victimization in 2010 and 2009, but it was also not listed in the table for jails with allegations of sexual victimization reported by local jail authorities in 2010 and 2009.  Id.

amended complaint, 28 C.F.R. § 115.17, and 42 U.S.C. § 156, the Court finds that these sources do not address the idea of having two correctional officers, video monitoring, proper activity logs, or a procedure of unloading the female inmates first when transporting female inmates from court to the jail, or even at all times. The regulation addresses the issue of "hiring and promoting" and none of the facts alleged in the second amended complaint alleged that the County failed in these practices set forth in 28 C.F.R. § 115.17.[14] Therefore, these sources do not put policymakers of Defendant County on actual or constructive notice regarding the particular omission that Plaintiff alleges, which is the idea of having two correctional officers, video monitoring, proper activity logs, or a procedure of unloading the female inmates first when transporting female inmates from court to the jail. Castro, 833 F.3d at 1076 (quoting Canton, 489 U.S. at 396).

Lastly, Plaintiff cites to the language in 15 CCR § 1027 that "Whenever one or more female inmates are in custody, there shall be at least one female employee who shall be immediately available and accessible to such females." (SAC at ¶ 56.) Plaintiff alleges that based on this standard, Defendant County should have required a female correctional officer to be with male correctional officers during opposite-sex transports and that there is a recognition that it is important to have female officers present so as not to leave female inmates solely in the care of male correctional officers in secluded circumstances like transport vans. (Id.) However, as pointed out by Defendant County, this requirement for one female employee is part of a larger paragraph, which states:

> Whenever there is an inmate in custody, there shall be at least one employee on duty at all times in a local detention facility or in the building which houses a local detention facility who shall be immediately available and accessible to inmates in the event of an emergency. Such an employee shall not have any other duties which would conflict with the supervision and care of inmates in the event of an emergency. Whenever one or more female inmates are in custody, there shall be at least one female employee who shall be immediately available and accessible to such females.

15 CCR § 1027.

---

[14] The Court notes, as discussed above, that the complaint is devoid of factual allegations and only contains conclusory statements regarding inadequacies in hiring.

This requirement to have one female officer who is immediately available and accessible to female inmates who are in custody pertains to local detention facilities, and there is no requirement that a female officer must be on transports. Further, it is not plausible to infer that this regulation recognizes that female inmates should not be left in the care of male correctional officers in secluded circumstances such as transport vans as there is nothing to indicate that male correctional officers can never be alone with a female inmate, just that a female officer should be immediately available and accessible to a female inmate. The regulations in <u>Castro</u> are distinguishable from 15 CCR § 1027. Therefore, the Court finds that 15 CCR § 1027 does not put policymakers of Defendant County on actual or constructive notice regarding the particular omission that Plaintiff alleges, which is a requirement that two correctional officers transport inmates.

Plaintiff's complaint fails to sufficiently allege that Defendant County had actual or constructive notice. This case is distinguishable from the hypothetical that the Supreme Court has given "of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." <u>Connick</u>, 563 U.S. at 63 (citing <u>Canton</u>, 489 U.S. at 390 (internal citations and quotation marks omitted)). The Court cannot say that the violation of federal rights in this case, the sexual assault of Plaintiff, is a "highly predictable" or "plainly obvious" consequence of Defendant County's action or inaction. The Court finds that there is no basis to conclude that Plaintiff has sufficiently pled that the unconstitutional consequences of failing to have a policy of two or more officers transporting opposite sex inmates, having a policy allowing one officer to transport opposite sex inmates, not recording times of transports, not using cameras to record transports, and the other policies and omissions that Plaintiff alleges in the second amended complaint are so patently obvious that Defendant County was deliberately indifferent.

While Plaintiff points to measures that she believes Defendant County could have taken that would have prevented the alleged sexual assault, it is not sufficient for a plaintiff to merely point to something that the city could have done to prevent the incident. <u>See</u> <u>Clouthier</u>, 591 F.3d

at 1250 (citing <u>Canton</u>, 489 U.S. at 392).  The Court is mindful that a municipality cannot simply be held liable under § 1983 on a <u>respondeat</u> <u>superior</u> theory.  <u>See</u> <u>id.</u>  Therefore, the Court finds that Plaintiff has failed to sufficiently allege that Defendant County's policy regarding opposite-sex transports was deficient, and this theory should be dismissed.

The Court finds that Plaintiff's second amended complaint has not presented "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and suggested an entitlement to relief "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." <u>Starr</u>, 652 F.3d at 1216.  Accordingly, the Court recommends that Defendant County's motion to dismiss the <u>Monell</u> claim be granted.[15]

3.    <u>Leave to Amend Should Not be Granted</u>

The final inquiry regarding Defendant County's motion to dismiss is whether Plaintiff should be granted leave to amend her <u>Monell</u> claim.

Generally, leave to amend shall be freely given when justice so requires.  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003).  "This policy is 'to be applied with extreme liberality.'"  <u>Id.</u> (quoting <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th Cir. 2001)).  Leave to amend should be freely given in the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.  <u>Id.</u> at 1051-52.  Absent prejudice, or a strong showing of the other factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.  <u>Id.</u> at 1052.  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."  <u>Id.</u> at 1052 (citing <u>Chang v. Chen</u>, 80 F.3d

[15] Plaintiff requests that Defendant County's motion to dismiss be continued and the stay in this action be lifted if Defendant County's motion to dismiss the second amended complaint is not denied.  The Court infers that Plaintiff requests a continuance of the motion to dismiss so that she can conduct discovery.  The Court is recommending that Defendant County's motion to dismiss be granted.  The Court finds that it is appropriate to decide the instant motion to dismiss at this time as motions to dismiss are routinely decided prior to discovery in an action.  <u>See</u> <u>Starr</u>, 652 F.3d at 1216 (finding that a complaint's allegations must plausibly suggest an entitlement to relief, "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.")

1  1293, 1296 (9th Cir. 1996)).

2      Here, Plaintiff was advised in the May 30, 2017 findings and recommendations

3  recommending dismissing her first amended complaint that she would be given one final

4  opportunity to amend. (ECF No. 43.) Plaintiff was also advised in the order adopting the May

5  30, 2017 findings and recommendations that she would be given one final opportunity to amend

6  the complaint. (ECF No. 46.)

7      Further, Plaintiff has not provided any facts to support the deficiencies in hiring theory,

8  despite being advised twice that it was insufficient. Plaintiff concedes that the inadequate

9  training theory claim is not plausible. It is unclear if Plaintiff is even bringing a claim based on a

10 ratification theory by an authorized policymaker, and Plaintiff has previously been instructed as

11 to ratification theory by an authorized policymaker.

12     Accordingly, the Court recommends that Plaintiff's <u>Monell</u> claim be dismissed without

13 leave to amend.[16]

14     **B.      Plaintiff's Motion to Lift the Stay Should be Granted in Part**

15     Plaintiff requests that the Court lift the stay in this action. The Court also conducted a

16 review hearing as to Defendant Rich on September 20, 2017.

17      In the February 1, 2017 findings and recommendations, the undersigned found that

18 when weighing the five factors in <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322 (9th Cir.

19 1995) ("<u>Keating</u> factors"), the action should be stayed as to Defendant Rich at that time, but not

20 as to Defendant County until an answer is filed by Defendant County. (ECF No. 25.) The

21 findings and recommendations also recommended that a review hearing be set for 90 days from

22 the date that the motion to stay was granted as to Defendant Rich. (<u>Id.</u>) On March 21, 2017,

23 Chief Judge Lawrence J. O'Neill adopted the findings and recommendations. (ECF No. 29.)

24 The Court also set a review hearing as to Defendant Rich before the undersigned for May 24,

25 2017, which then has been continued several times. (ECF Nos. 29, 38, 48, 59, 65.)

26     In the February 1, 2017 findings and recommendations, the undersigned noted that if

27 _____

28 [16] The Court notes that should additional facts become known to Plaintiff that would change the analysis on the
<u>Monell</u> claim, there are remedies available, such as seeking leave to amend.

Defendant Rich's criminal trial did not commence during or before July 2017, there may be changed circumstances and a change in the analysis of the <u>Keating</u> factors. The Court did not express an opinion as to whether the stay would be lifted and noted that the Court would have to evaluate the parties' arguments regarding the <u>Keating</u> factors.

Plaintiff argues that a new analysis of the <u>Keating</u> factors coupled with other circumstances demonstrates that Plaintiff's due process rights and the interests of justice dictate that the stay be lifted. Plaintiff requests that the stay be lifted entirely, or alternatively, partially to allow discovery that will not present Fifth Amendment issues. Defendant County opposes lifting the stay. Defendant Rich opposes lifting the stay, and argues that if the Court does not continue the present stay, the stay should remain to protect Defendant Rich's Fifth Amendment rights.

"While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution." <u>Fed. Sav. & Loan Ins. Corp. v. Molinaro</u>, 889 F.2d 899, 902 (9th Cir. 1989) (citations omitted). The Ninth Circuit has held that "[i]n the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence." <u>Keating</u>, 45 F.3d at 324 (quoting <u>Sec. & Exch. Comm'n v. Dresser Indus., Inc.</u>, 628 F.2d 1368, 1374 (D.C. Cir. 1980)). However, "when the interests of justice seem to require" a stay, a court may exercise its discretion to stay civil proceedings. <u>Keating</u>, 45 F.3d at 324 (quoting <u>United States v. Kordel</u>, 397 U.S. 1, 12 n.27 (1970)).

In deciding whether to stay the civil proceedings, the court should consider "the extent to which the defendant's fifth amendment rights are implicated." <u>Keating</u>, 45 F.3d at 324 (quoting <u>Molinaro</u>, 889 F.2d at 902. The Court should also consider these five factors, which are:

> 1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

<u>Keating</u>, 45 F.3d at 325.

Here, it is evident that there is an overlap between the allegations in the civil action and the criminal action, as Defendant Rich is being criminally prosecuted for the alleged assault of Plaintiff. Therefore, the Court finds that proceeding in the civil action would likely implicate Defendant Rich's Fifth Amendment rights in a significant manner.

Next, the Court discusses Plaintiff's motion to lift the stay in the context of the five factors outlined in Keating. See Keating, 45 F.3d at 325.

1. Interest of Plaintiff in Proceeding Expeditiously with This Litigation or Any Particular Aspect of It, and the Potential Prejudice to the Plaintiff of a Delay

Originally the Court found that this factor weighs in favor of denying Defendant Rich's motion to lift the stay.

Plaintiff asserts that Defendant Rich has continued his criminal case twice in the more than six months since the Court granted the stay. At the time of Plaintiff's motion to lift the stay, the current trial date in the criminal case was August 28, 2017. Plaintiff contended that if the trial was continued again beyond August 28, 2017, then this Court would face continued interference with its ability to conduct its proceedings expeditiously and fairly for all parties. Plaintiff argues that the history of the criminal case is indicative of the fact that the trial continuances will continue. Plaintiff argues that she has been prejudiced because she has not been able to depose knowledgeable witnesses regarding the Monell claim. Plaintiff also argues that at a minimum, she should be able to preserve evidence, obtain evidence of a non-testimonial nature that does not implicate Defendant Rich's Fifth Amendment rights.

Defendant Rich argues that there is little, if any, prejudice to Plaintiff in delaying this action two more months until November 2017, when his criminal trial will occur. He also contends that the delay to November 2017 is not prejudicial because Defendant County's motion to dismiss is still pending. He asserts that Plaintiff's claim regarding witnesses' memories fading and evidence being lost cannot be reconciled with Plaintiff's twenty-two month delay in filing this action.

Defendant County argues that there is little prejudice to Plaintiff from the delay in the criminal action because the instant action is still in the pleadings stage, there has not been a

scheduling conference, and the motion to dismiss the second amended complaint is pending. Defendant County contends that it is still highly likely that the criminal trial will proceed before the civil trial in the normal course of proceedings. Defendant County asserts that Plaintiff has set forth no basis for blaming Defendant Rich for the delays in the criminal case.

The Court is recommending that Defendant County's motion to dismiss the <u>Monell</u> claim be granted without leave to amend. This matter is still in the pleadings stage. Although Defendant Rich has filed an answer, there has been no scheduling conference yet. The scheduling conference is currently scheduled for November 6, 2017, before the undersigned. While Plaintiff contends that she would want to conduct discovery concerning the <u>Monell</u> claim, as the case is still in the pleadings stage, and there has not been a scheduling conference in this action, discovery is not open and she would not be able to depose employees of Defendant County or conduct other discovery that she wishes to conduct. Discovery other than initial disclosures will not open until after the Rule 26(f) conference absent a stipulation or a court order. <u>See</u> Fed. R. Civ. P. 26(d)(1).

The Court notes that Plaintiff filed the instant action on November 4, 2016. The alleged incident occurred on January 27, 2015. Although it has been almost three years since the alleged incident, it has been less than a year since the action was filed. The action has been stayed as to Defendant Rich since March 21, 2017. Defendant Rich's criminal trial is expected to commence in the next two months.

Therefore, the Court finds that Plaintiff has suffered minimal prejudice from the stay so far as this matter is still at the pleading stage. However, Plaintiff will suffer greater prejudice at the time that this matter is ready for a scheduling conference. Accordingly, the Court finds that this factor weighs in favor of granting Plaintiff's motion to lift the stay.

> 2. <u>Burden Which Any Particular Aspect of the Proceedings May Impose on Defendant Rich</u>

Originally, the Court found that the burden that the instant civil action may impose on Defendant Rich weighs heavily in favor of granting the stay.

Plaintiff argues that Defendant Rich Fifth Amendment rights are not implicated by

production of Defendant Rich's personnel file, IA investigations, and other documentary evidence that does not implicate his Fifth Amendment rights. Plaintiff contends that Defendant Rich's assertion that failing to stay this civil litigation will impose a serious burden on him and prejudice his criminal defense is merely speculative. Plaintiff suggests that the Court could tailor and limit discovery in a manner that does not burden or expose the basis of Defendant Rich's criminal defense by using a protective order. Plaintiff also agrees to forbear from deposing Defendant Rich and from requiring any verifications until after the conclusion of Defendant Rich's criminal case.

Plaintiff also argues that Defendant Rich could have invoked his statutory speedy trial rights under the California Penal Code or he could have withdrawn his general waiver at any time which would have ensured that he would have been brought to trial within sixty days. Plaintiff contends that there is no indication how long Defendant Rich waited to bring the motion for the District Attorney to produce evidence, what the motion was, why it took so long, why it was not brought earlier, and why the trail had to be continued seven weeks to August 28, 2017, if Defendant Rich had an order entitling him to documents which were in the possession of the District Attorney. Plaintiff contends that while disclosing the type of motion and information that Defendant Rich is seeking in the criminal case could result in issues with preserving Defendant Rich's defense strategies, Defendant Rich has not requested to disclose the information in chambers or pursuant to an attorney eyes only protective order. Plaintiff asserts that Defendant Rich has not acted diligently to promptly bring his criminal case to trial and has failed to act promptly to obtain the discovery needed and to enforce any orders with sufficient diligence.

Defendant Rich argues that because he has a pending criminal case involving the same subject matter as the instant civil action, he has a powerful incentive to invoke his Fifth Amendment right from compelled self-incrimination. Defendant Rich also argues that if he does exercise that right in the civil action, then he cannot adequately defend himself in this action, and the trier of fact may draw an adverse inference, which prejudices him. Defendant Rich contends that he may be forced to expose the basis of his criminal defense and the scope of discovery for

the criminal case would in effect be expanded since civil discovery has a broader scope.

Defendant Rich has filed a declaration of his counsel in the criminal matter, which states that criminal counsel had filed a motion to compel the District Attorney to produce documents that the office had not produced. (Declaration of Eloise Kelsey ("Kelsey Decl.") at ¶ 2, ECF No. 68-1.) On August 21, 2017, the court in the criminal matter granted the motion to compel and issued an order to show cause why such documents should not be produced forthwith. (Id.) On August 28, 2017, the date on which the trial was scheduled to begin, the District Attorney could not explain why such documents still had not been produced and the District Attorney had a witness that was unavailable because of a death in the family, so a continuance was requested. (Id.) The court in the criminal case continued the case to September 5, 2017, and the District Attorney produced part of the requested documents during the Labor Day weekend. (Id. at ¶ 3.) Defendant Rich's expert was unavailable to examine the documents prior to September 5, 2017, so Defendant Rich agreed to the District Attorney's request for a continuance in order to have time to examine the newly produced documents. (Id.) Ms. Kelsey contends that Defendant Rich was ready for trial in July and August, but for the problems with witness availability and the late production of documents. (Id. at ¶ 4.)

Defendant County argues that the broad civil discovery rules would permit discovery that would most likely interfere with Defendant Rich's ability to defend himself in the criminal proceedings.

Here, there is a pending criminal prosecution against Defendant Rich, and not merely a speculative chance of a criminal prosecution. As discussed above, the Court finds that the overlapping facts and circumstances of these two cases would adversely affect Defendant Rich's ability to defend himself in the related criminal action. Based on the information presented to this Court, the delay in the criminal action is not only due to Defendant Rich, as the District Attorney requested a continuance due to witness unavailability and there was the pending motion for production of documents. However, the Court notes that Defendant Rich has not provided this Court with a complete history of the motion and the delay in filing the motion when the criminal case has been pending for over two years.

1    The Court finds that the greatest burden on Defendant Rich would be any discovery that

2    implicates his Fifth Amendment rights.  However, as Plaintiff suggests, discovery in this action

3    of evidence that does not implicate Defendant's Rich's Fifth Amendment rights would not create

4    much of a burden on Defendant Rich.

5    Accordingly, the Court finds that the burden that the instant civil action may impose on

6    Defendant Rich weighs heavily in favor of denying the motion to lift the stay fully, but weighs in

7    favor of granting the motion to lift the stay as to discovery that is of a non-testimonial nature

8    which does not implicate Defendant Rich's Fifth Amendment rights.

9        3.    Convenience of the Court in the Management of Its Cases, and the Efficient Use
              of Judicial Resources
10

11   The Court originally found that the convenience of the Court in the management of its

12   cases and the efficient use of judicial resources weighed in favor of granting the stay.

13   Plaintiff asserts that the testimony at the criminal trial is going to be narrowly focused

14   and that not all of the witnesses that Plaintiff seeks to depose will be testifying at the criminal

15   trial, so depositions in the instant civil action will still be required.  Plaintiff contends that there

16   is no reason to believe that the same discovery disputes will be brought before the Court twice.

17   Defendant Rich argues that if this action is stayed, there will not be the need for

18   duplicative depositions or the depositions would be shorter as the scope of testimony and issues

19   in this civil action could be narrowed because of the criminal action.

20   Defendant County argues that staying this civil action would avoid duplicative civil

21   depositions, or at least only require short civil depositions, as the criminal trial will provide

22   testimony of both prosecution and defense witnesses.  Defendant County also contends that

23   staying this civil action would result in fewer discovery disputes and a more open, unimpeded

24   discovery process in the civil action after the resolution of the criminal proceedings.

25   The Court notes that it has an interest in resolving cases on its docket in a timely manner.

26   However, lifting the stay fully and allowing this civil action to continue while Defendant Rich's

27   criminal prosecution is pending could result in an inefficient use of judicial resources.  Allowing

28   the criminal action to proceed first may streamline discovery in this action and help expedite the

resolution of this action. Yet, there has been the preliminary testimony in the criminal trial and Plaintiff indicates that not all of the witnesses it wants to depose will be called at the criminal trial and that it will want to depose witnesses on a broader range of testimony than just the testimony at the criminal trial, so depositions will still be needed in this matter. The Court is aware that if it lifts the stay regarding any evidence of a non-testimonial nature which does not implicate Defendant Rich's Fifth Amendment rights, there could be a number of discovery disputes regarding whether evidence is of a non-testimonial nature which does not implicate Defendant Rich's Fifth Amendment rights. When the Court considers the convenience of the Court and the efficient use of judicial resources, it appears to be more efficient to allow discovery in this matter that will not implicate Defendant Rich's Fifth Amendment rights.

In the interests of judicial efficiency, the Court finds that this factor weighs in favor of denying the motion to lift the stay fully and in favor of lifting the stay as to discovery that is non-testimonial which does not implicate Defendant Rich's Fifth Amendment rights.

### 4. Interests of Persons Not Parties to the Civil Litigation

The Court originally found that this factor does not weigh in favor of granting or denying a stay.

Plaintiff argues that this factor may not directly weigh either way since there are no such parties, but she also argues that the community has an interest in the case proceeding without delay. The next factor in the analysis appropriately addresses the interest of the public. Defendant Rich and Defendant County contend that there are no third-party interests that depend on resolution of the action and are affected by this stay.

The Court finds that this factor does not weigh in favor of granting or denying the motion to lift the stay.

### 5. Interest of the Public in the Pending Civil and Criminal Litigation

Originally, the Court found that the interest of the public in the pending civil and criminal litigation weighs slightly against granting a stay.

Plaintiff argues that this factor weighs heavily against continuing the stay based on the information discussed in the other factors. Defendant Rich and Defendant County argue that the

public has an interest in the orderly and proper administration of criminal justice. Defendant County contends that the criminal proceedings against Defendant Rich should have precedence over the civil action. Defendant County and Defendant Rich cite to several district court cases which stayed a civil action because of criminal cases. Plaintiff responds that S.E.C. v. Alexander recognizes a court may be justified in staying civil proceedings when there is substantial prejudice shown, but it also recognizes that there are other protective measures available. S.E.C. v. Alexander, 2010 WL 5388000, at *6-7 (N.D. Cal. Dec. 22, 2010).

The public's interest in a speedy resolution of this civil action is balanced against its interest in maintaining the "integrity of the criminal case." Keating, 45 F.3d at 324. In Alexander, the Northern District of California recognized that "where a criminal case on the same matter is already underway, some courts have reasoned that the criminal case is of primary importance to the public, and that the public's strongest interest is in ensuring the criminal proceeding. Alexander, 2010 WL 5388000, at *6 (citations omitted).

While the public does have an interest in ensuring that the victim is made whole as rapidly as possible, the stay in this matter is not expected to last a long time from the time that this findings and recommendations is adopted by the district judge, as it is anticipated that Defendant Rich's criminal trial will be set for a date in November 2017. Further, as discussed above, this case is still in the pleading stage. Lifting the stay in this matter fully could affect the integrity of the criminal proceeding, but lifting the stay as to matters that do not implicate the Fifth Amendment would not affect the integrity of the criminal proceeding. Therefore, this factor weighs slightly against lifting the stay fully, but weighs slightly for lifting the stay as to evidence that is non-testimonial which does not implicate Defendant Rich's Fifth Amendment rights.

6.    Weighing of the Factors

Accordingly, when the Court weighs the five Keating factors, the Court recommends that Plaintiff's motion to lift the stay be granted in part. The stay should be lifted as to Defendant Rich for any evidence of a non-testimonial nature which does not implicate Defendant Rich's Fifth Amendment rights. Therefore, the parties should be able to conduct discovery of any

evidence of a non-testimonial nature which does not implicate Defendant Rich's Fifth Amendments rights. Plaintiff indicates that she would be willing to stipulate to a protective order. The parties may enter into a protective order regarding the production of documents and any other matter that the parties feel is necessary. If the parties are unable to agree on the protective order, they may seek the Court's assistance to resolve any disagreement through the informal discovery dispute process found on the Court's website, under Judge Boone, in an effort to avoid expenses and further delays.[17]

## V.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  Defendant County's motion to dismiss the <u>Monell</u> claim be GRANTED;

2.  Plaintiff's <u>Monell</u> claim be DISMISSED without leave to amend;

3.  Plaintiff's motion to lift the stay be GRANTED IN PART;

4.  The stay be lifted as to Defendant Rich for any evidence of a non-testimonial nature which does not implicate Defendant Rich's Fifth Amendment rights; and

5.  A review hearing on the stay be set for 60 days from the date that the order adopting issues.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of these findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Within fourteen (14) days of service of any objections, any party may file a reply. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>,

---

[17] While the Court is recommending that discovery be allowed that is non-testimonial which does not implicate Defendant Rich's Fifth Amendment rights, this is just a recommendation to the district judge which may or may not be adopted. Further, the opening of discovery is governed by Federal Rule of Civil Procedure 26.

772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **September 29, 2017**

UNITED STATES MAGISTRATE JUDGE