# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY GONZALEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF MERCED, et al.,<br><br>  Defendants. | Case No. 1:16-cv-01682-LJO-SAB<br><br>ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART FINDINGS AND RECOMMENDATIONS<br><br>(ECF Nos. 51, 52, 60, 61, 62, 63, 64, 67, 68, 71, 75, 76, 78) |

Plaintiff Ashley Gonzalez ("Plaintiff") filed the complaint in this action on November 4, 2016. (ECF No. 1.) Therein, Plaintiff asserted a claim against Defendant Gregory Rich ("Defendant Rich") and Does 1-5 for alleged violations of her civil rights under 42 U.S.C. § 1983 and a claim against Defendant County of Merced ("Defendant County") and Does 6-10 for violations of her civil rights under 42 U.S.C. § 1983 and <u>Monell v. Dep't of Soc. Servs. Of City of N.Y.</u>, 436 U.S. 658 (1978). At the time of the alleged incidents, Plaintiff was a pre-trial detainee in the custody of Defendant County.

On November 29, 2016, Defendant County filed a motion to dismiss the complaint, and on December 20, 2016, Defendant Rich filed a motion to stay this action pending the resolution of the state court criminal prosecution against him. (ECF Nos. 7, 11.) On March 21, 2017, the Court adopted the Magistrate Judge's recommendation that the Court dismiss Plaintiff's <u>Monell</u> claim with leave to amend against Defendant County and stay the action as to Defendant Rich at

that time, but not as to Defendant County unless and until an answer is filed by Defendant County. (ECF No. 29.)

On April 4, 2017, Plaintiff filed a first amended complaint, which Defendant County moved to dismiss on April 18, 2017. (ECF Nos. 30, 31.) On June 29, 2017, the Court adopted the Magistrate Judge's recommendation that the Court dismiss Plaintiff's Monell claim against Defendant County with leave to amend. (ECF No. 46.)

On July 14, 2017, Plaintiff filed a second amended complaint. (ECF No. 49.)("SAC".) On July 28, 2017, Defendant County filed a motion to dismiss which was referred to the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF Nos. 51, 53.) On August 23, 2017, Plaintiff filed a motion to lift the stay, which was set for hearing before the assigned Magistrate Judge. (ECF No. 62.) The Magistrate Judge also conducted a review hearing as to the stay for Defendant Rich on September 20, 2017.

On September 29, 2017, the Magistrate Judge filed findings and recommendations on the motion to dismiss and motion to lift the stay. (ECF No. 75.) The findings and recommendations recommended that the Monell claim be dismissed without leave to amend and that the stay be lifted as to Defendant Rich for any evidence of a non-testimonial nature which does not implicate Defendant Rich's Fifth Amendment rights. The Magistrate Judge also recommended that a review hearing be set for 60 days from the date that the order adopting issues.

On October 13, 2017, Plaintiff filed objections to the findings and recommendations. (ECF No. 76.) On October 26, 2017, Defendant County filed a reply to the objections. (ECF No. 78.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this Court has conducted a de novo review of this case. Having carefully reviewed the entire file, the Court finds the findings and recommendations to be supported by the record and by proper analysis in all but one respect related to Plaintiffs' policy or custom claim.

Under Monell, "a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor . . . in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." 436 U.S. at 691. A municipality can only be held liable for injuries

caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. Id. at 694. A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)). More generally, a plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. Mabe v. San Bernardino Cnty., 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Municipal liability under Monell may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. See Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014); Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008). Plaintiff has advanced several theories of liability in her Complaint, the most viable of which is based on her assertion of a longstanding practice or custom. Such an unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. Monell, 436 U.S. at 691 (internal quotation marks omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). However, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the [municipality] and the

opportunity to conform to constitutional dictates ..." Connick v. Thompson, 563 U.S. 51, 63 n.7 (2011).[1] Applying Monell liability in the context of a pretrial detainee's due process rights, the Ninth Circuit has held that the objective deliberate indifference standard is met when a "plaintiff [ ] establish[es] that the facts available to [entity] policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016) (quoting City of Canton v. Harris, 489 U.S. 378, 396 (1989)).

It is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim. In other words, how many prior incidents are needed to allege a persistent and widespread custom? How similar must they be? Compare Mockler v. Multnomah Cty., 141 F.3d 1177 (9th Cir. 1998) (on review of motion for judgment as a matter of law, declining to find no reasonable jury could find existence of pattern and practice of sexual harassment where Sheriff admitted he knew of sexual harassment but did nothing about it and chose not to discipline harassing employees), with Motelewski v. Maui Police Dep't, No. CV 11-00778 BMK, 2012 WL 3780188, at *3 (D. Haw. Aug. 30, 2012), on reconsideration in part, No. CV 11-00778 BMK, 2013 WL 361762 (D. Haw. Jan. 28, 2013) (finding on summary judgment that two prior incidents of officers being charged with sexual assault and one prior incident of officer being convicted for trying to extort sexual favors during a traffic stop insufficient to demonstrate widespread pattern or custom of sexual abuse in department), and Wilson v. Oregon, No. 3:11-CV-01061-PK, 2013 WL 6196983, at *11 (D. Or. Nov. 27, 2013) (granting summary judgment for municipal defendant where evidence of pattern consisted of one man who allegedly sexually harassed two women and where there was no evidence that sexual harassment was otherwise tolerated by or was standard operating procedure of the municipality). Overlain on top of these examples is the principle that: "[n]ormally, the question of whether a policy or custom exists would be a jury question." Trevino v. Gates, 99

---

[1] The Court does not accept Plaintiff's position that the similar acts needed to plead or prove a custom/practice claim need not be "prior" acts. (ECF No. 76 at 13-14.) Plaintiffs rely on Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1074 n.7 (9th Cir. 2016), for this proposition, but, while the Monell/deliberate indifference jury instruction approved of in Castro did not directly require proof of prior similar acts, that was only because prior incident evidence was not presented at that trial. See id. at 1080.

F.3d 911, 918 (9th Cir. 1996). With these standards in mind, the Court turns to the factual allegations in the Complaint.

On or about January 27, 2015 at 9:40pm, Plaintiff, a pretrial detainee, was being taken from the Merced County courthouse back to the John Latorraca Correctional Facility ("JLCF"). (SAC ¶ 12.) Plaintiff alleges that Defendant Rich, a Correctional Officer that was driving the County vehicle, grabbed and groped her genital area more than once while transporting her back to JLCF (SAC ¶¶ 17-19.) Defendant Rich was terminated and is now facing criminal prosecution for the incident. (ECF No. 75 at 18.)

The Complaint alleges that on that same day (January 27, 2015), Rich also groped two of his co-workers, (SAC ¶¶ 25-26), who are referred to herein as Coworker 1 and Coworker 2. Specifically, Rich allegedly and without consent groped Coworker 1's breast. (Id.) Coworker 1 reported the incident to her supervisor who later reported it to others up the chain of command. (Id.) Also on that same day, Defendant Rich grabbed Coworker 2's left buttocks and made sexually inappropriate comments to her.[2] (Id.) Because both of these events are contemporaneous conduct, the Court does not consider them as contributing toward any pattern/custom allegation.

However, certain evidence related to the day-of conduct is relevant. First, the Complaint alleges that Coworker 2 had been "subjected to previous sexual harassment by defendant Rich, including requests to touch her butt," but she did not report those incidents because she feared retaliation by Rich or others because she "heard RICH state several times that he had been through many internal affairs investigations ("IAs"), and had gotten out of every single one of them." (SAC ¶ 28.)[3] This is an allegation of first person knowledge of sexually inappropriate behavior workplace by Rich prior to January 27, 2015.[4]

---

[2] Because details matter, the exact allegation is that Defendant Rich grabbed the left side of the buttocks of Coworker 2 after first asking her, "Let me touch your butt, let me touch your butt," and then, after being refused, asking her, "Let me lick your clit." (SAC ¶ 26).

[3] Coworker 2 also allegedly stated "that there are female correctional officers that have confided to her about their awareness of other similar incidents of female deputies being sexually touched by RICH," although the Complaint is non-specific as to the timing of those incidents, so they are not considered part of any allegation of pattern and practice for purposes of the present analysis. (SAC ¶ 30.)

[4] There is a great deal of discussion in the F&Rs and the parties' briefs about the extent to which Coworker 2's allegation that she heard Rich discussing prior IAs contributes to the quantum of allegations related to pattern/custom. For purposes of this analysis, the Court is not considering any allegations regarding prior IAs

5

It is also alleged that Coworker 2 told another female correctional officer (Coworker 3) about the incident on January 27, 2015. (SAC ¶¶ 26-27.) Coworker 3 responded in a manner that indicated she was aware of Defendant Rich's propensity to engage in such behavior (i.e., inappropriate sexual touching). (Id.) Specifically, it is alleged that Coworker 2 told Coworker 3 that Rich "had done something highly inappropriate to her," and asked "please don't leave me alone with him again[,]" to which Coworker 3 replied: "Oh, I figured. That's why I came back." (Id.) The Complaint goes into further detail about Coworker 3's experience with Defendant Rich. It is alleged that at some point prior to (perhaps by several weeks) the January 27, 2015 incident, Coworker 3 made a formal written complaint to a supervisor, Sgt. Tilley, that Defendant Rich engaged in "sexually abusive and harassing behavior at JLCF" by masturbating in front of her in an isolated area of the facility, despite her protests. Sgt. Tilley reported this to Lt. Jason Goins who later became the Undersheriff for the County. (SAC ¶ 21.) "[Coworker 3] testified that this had happened several times at work, in the control room at JLCF, which is a secluded area…" (Id.). Furthermore, Plaintiff alleges that after conferring with Lt. Goins, Sgt. Tilley decided not to investigate Coworker 3's complaint. (Id.) The timing of this incident and Coworker 3's reporting of it to her supervisors vis-à-vis the January 27, 2015 incident is somewhat unclear. The Complaint alleges that the incident occurred in "early 2015." (Id.) It is less clear, and the F&Rs discuss at length, when it was reported to supervisory staff. (See ECF No. 75 at 19-20.) However, the Court finds that because the applicable "constructive notice" standard does not require direct notice, the timing of the reporting is not dispositive of the materiality of this incident to the present inquiry. It represents an example of Defendant Rich engaging in serious, inappropriate sexual behavior in at JLCF.[5]

---

because those are not needed in order to permit this claim to proceed. To the extent that discovery reveals further information about the IAs or related investigations, those may be material at later stages of the case.

[5] The County does itself no favors in its briefing concerning this particular incident. The County points out, correctly, that Coworker 3 was previously involved in a relationship with Defendant Rich and that when she discussed her complaint with Sgt. Tilley one thing she wanted to do was "make it clear to Rich that it was not allowable now that they weren't in a relationship anymore." (ECF No. 51-3 at 134:19-26.) The County goes too far, however, by arguing that the above complaint was therefore merely "[a]n ex-girlfriend making sure a relationship is over." (ECF No. 78 at 5.) This attempt to establish that this incident "has nothing to do with a sexual assault of an inmate" is unavailing. (Id.) The record demonstrates that Rich had a propensity to behave in sexually inappropriate ways in the workplace, a workplace in which he interacted with individuals in custody, who were in a position of

Finally, Sgt. Tilley testified at Defendant Rich's state criminal preliminary hearing that "he had *received complaints about RICH before the subject incident*, but which he interpreted as personality conflicts he hears on a daily basis as a supervisor." (SAC ¶ 22) (emphasis added.) Sgt. Tilley also admitted personally overhearing Rich "make sexually inappropriate comments about other female correctional officers, but he dismissed them as 'shop talk.'" (Id.) Sgt. Tilley confirmed, under oath, that such shop talk "was a common occurrence at JLCF…" (Id.). Viewing the allegations in the light most favorable to Plaintiff, as this Court must at this stage, this testimony, coupled with the fact that Sgt. Tilley decided to take no action on Coworker 3's complaint, plausibly suggests the existence of an environment at JLCF that encouraged and emboldened individuals to act in sexually inappropriate ways.

Viewing the allegations in the light most favorable to Plaintiff, the SAC suggests the existence of a custom of sexually inappropriate touching at JLCF and that the County was on constructive notice of the existence of such a custom. Assuming such a custom did exist, that custom could plausibly amount to deliberate indifference to Plaintiff's rights and be the driving force behind the violation of her rights. As a pretrial detainee, Plaintiff was in a position of less power than the various corrections officers involved in the prior incidents discussed above. It is plausible to infer from the circumstances alleged that if JLCF employees experienced sexually inappropriate conduct of the nature alleged, detainees would be subject to similar (if not worse) conduct. Accordingly, the Court declines to adopt the findings and recommendations with regard to Plaintiff's policy/custom allegation. Defendant's motion to dismiss is DENIED as to this form of Monell liability.

The Court adopts the findings and recommendations ("F&Rs") as to the failure to train, inadequacies in hiring, and ratification theories of Monell liability (ECF No. 75 at 15-18). As the F&Rs discuss, Plaintiff acknowledges a failure to train employees not to commit sexual assault is

---

less power than his coworkers. That the conduct was not identical does not make it irrelevant. See, e.g., Hogan v. City of Easton, No. CIV A 04-759, 2006 WL 3702637, at *10 (E.D. Pa. Dec. 12, 2006) (prior excessive force incidents do not have to involve shootings to contribute to a pattern an practice showing in a shooting case). Here, sufficient facts are alleged to suggest the existence of a pattern of unwanted sexual touching and closely related conduct by Defendant Rich. At the motion to dismiss stage, this is sufficient.

1 not a plausible claim since there is no patently obvious need to train officers not to sexually
2 assault women. (ECF No. 75 at 16.) Similarly, an inadequate hiring claim is not applicable in this
3 case since there are no facts alleged concerning hiring practices, generally or specifically. (Id. at
4 17.) Nor are there allegations that support a ratification theory of Monell liability since the
5 County did not affirm Defendant Rich's sexual assault of Plaintiff after the fact. (Id. at 17-18.)

With respect to any "deficient policies" claim under Monell (ECF No. 75 at 23-29), the relevant standard comes from Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016). Castro was arrested for public drunkenness and placed in a "sobering cell" along with another individual who was acting in a bizarre and combative manner. Id. at 1064-65. At some point during his detention, his cellmate severely beat Castro, causing Castro catastrophic injuries. Id. at 1065. Castro contended that the County of Los Angeles was liable under Monell for the way it designed and operated its sobering cell. Id. A municipality may be liable for a policy deficiency if "facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." Id. at 1076. The Ninth Circuit then defined as the relevant "custom or policy" the use of "a sobering cell that lacked adequate audio surveillance to detain more than one belligerent drunk person while checking the cell visually only once every half hour." Id. at 1075. Applying the relevant standard to the policy as identified, the Ninth Circuit found the jury reasonably could have found municipal liability based on evidence that building codes and internal police manuals required certain physical safety measures in such sobering cells – measures that were not in place in Castro's cell, but which likely would have prevented Castro's injuries. See id. at 1076-77.

Here, the question then becomes whether the SAC alleges plausibly that the facts put the County on notice that the "particular" policy deficiency was substantially certain to result in the violation of Plaintiff's constitutional rights.[6] Plaintiff alleges in the SAC that the problematic

---

[6] The Court has already found that the SAC plausibly alleges (a) a custom of sexually inappropriate touching at JLCF; (b) that the County was on constructive notice of the existence of such a custom; (c) the custom plausibly amounted to deliberate indifference to Plaintiff's rights, and (d) the custom was the driving force behind the violation of her rights. Plaintiff's arguments suggest that they are attempting to piggyback a deficient policy claim

8

policy was allowing individual male officers to transport female detainees, and that, either a video surveillance system should be used, a female officer should be present when female detainees are being transported, or some other system of documentation should be used to prevent misconduct (such as a log of miles travelled). (SAC ¶¶ 15, 56.) The Court agrees with the F&Rs that, unlike in Castro, here there were no closely analogous written regulations, rules, or policies that would have put the County on notice that its policy to permit individual male officers to transport female detainees was deficient. Rather, the only evidence that supports a finding of constructive notice is the evidence discussed above involving the existence of a widespread custom of sexual misconduct by Defendant Rich (and other JLCF employees). However, because the allegations of prior sexual misconduct do not point toward a "particular" policy change that would be needed, the Court does not believe a policy deficiency claim has been stated under the Castro standard. In other words, while the past pattern of sexual misconduct plausibly put the County on notice that JLCF employees could sexually touch inmates in an inappropriate manner, nothing in the allegations of past misconduct suggest the sexual touching would be any more likely to occur during transport than in other situations. Why wouldn't the pattern evidence just as easily put the County on notice that male officers should never be permitted to be alone with female inmates in any situation? Deliberate indifference under Castro requires a much more precise link between the conduct that put the municipality on notice and the alleged policy deficiency. As such, the Court finds there is not a sufficient link between the allegations of past sexual misconduct and the deliberate indifference required to establish a deficient policy claim. Accordingly, the Court adopts the F&Rs conclusion as to any Monell claim based on deficient policy.

Accordingly, Plaintiff's Monell claim is DISMISSED WITHOUT LEAVE TO AMEND as to the failure to train, inadequacies in hiring, ratification and deficient policy theories of Monell liability.

---

on this "pure" custom claim. But, this mixes issues. In evaluating a deficient policy claim, the question is whether the municipality was on notice (directly or constructively) that it was a policy failure or omission that was the driving force behind the violation of Plaintiff's rights. The custom evidence discussed above, presumed true at this stage of the case, plausibly suggests that there was a widespread custom of sexual misconduct that was the driving force behind the violation of Plaintiff's rights. Connecting this to a *policy deficiency* requires more.

9

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations, filed September 29, 2017, are adopted in part;
2. Defendant County's motion to dismiss Plaintiff's Monell claim is DENIED as to any pattern/custom claim and GRANTED WITHOUT LEAVE TO AMEND as to all other forms of Monell liability;
5. Plaintiff's motion to lift the stay is granted in part;
6. The stay is lifted as to Defendant Rich for any evidence of a non-testimonial nature which does not implicate Defendant Rich's Fifth Amendment rights; and
7. A review hearing is set as to Defendant Rich for January 11, 2018, at 3:15 p.m. before United States Magistrate Judge Stanley A. Boone in Courtroom 9 and Defendant Rich shall file a status report at least 7 days prior to the review hearing.

IT IS SO ORDERED.

Dated: **December 7, 2017**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE